## CALVIN THOMPSON v. THE STATE.

1. GRAND LARCENY—INDICTMENT.—In an indictment for theft of several articles of the aggregate value of over twenty dollars, it is sufficient to allege such aggregate value.   It is not necessary that the separate value of each article be set out.
2. SAME—EVIDENCE.—But to convict upon such indictment, the testimony must show the theft of all the articles alleged to have been stolen.
3. RECENT POSSESSION OF STOLEN PROPERTY.—It is error to charge the jury that mere possession of property recently stolen is *prima facie* evidence of theft, which devolves upon the defendant the necessity of explaining such possession.
4. SAME.—The rule in such case is, that the possession of property recently stolen is evidence against the accused, which is to be taken and considered by the jury in connection with the other testimony in the case.
5. SAME—CLAIM BY DEFENDANT OF RIGHT TO PROPERTY STOLEN.— Where there is evidence that the accused set up claim to property for the theft of which he is upon trial, the intent of the taking by the defendant should be submitted to the jury by the charge of the court.
6. ARGUMENT OF COUNSEL should be restricted to a discussion of the facts of the case and the conclusions legitimately deducible from the law applicable to them.

APPEAL from Bastrop.   Tried below before the Hon. J. P. Richardson.

Calvin Thompson was indicted for theft of "four bar-

row hogs and two sow hogs of the aggregate value of thirty dollars."

On the trial the owner of the hogs testified that his "hogs were missing about first of April, 1874. Some time about the first of July the two sows came home without the others and in the mark of the defendant."

* * "When the two sows came back I told Jim Williams, a freedman, who was living with me, to go to the defendant's house and look for my hogs. In a day or two Williams told me he saw four of my hogs in a pen on the premises of the defendant. I then applied for a search-warrant and went to defendant's house. This was about 6th July; found four hogs in defendant's pen, being the four barrows described in the indictment."

There was a conflict in the evidence as to ownership. Thompson's claim to the hogs had been public, and no attempt at concealment of the hogs was shown. No other evidence was given as to the two sows.

M. W. Trigg, for defendant, testified that some time in the spring of 1874 defendant came to witness for advice about a lot of his hogs that had come up with their mark changed. Witness advised him he had better go slow about taking hogs—to put up the hogs and keep them until somebody came and claimed them, in which event he could try the right of property in the hogs. This was before the arrest.

H. J. Wamel, for defendant, testified that he was a justice of the peace in Bastrop county; that about the last of March or first of April witness went to defendant's house to see about the election, which was soon to come off; while there defendant called the attention of witness to and asked witness to look at some of his hogs, the marks of which had been recently changed. The defendant asked witness what he must do about them. Witness told defendant to put them up in a pen and let the person who had changed the mark come and claim them; that in that

way the party could be caught and prosecuted. These hogs were the same described in the indictment.

The judge, after defining theft and its punishment, charged the jury as follows: "If hogs are going at large in their range, they are in possession of the owner, and if they are taken from the range, they are taken from the possession of the owner.

"Possession of property which has been recently stolen is *prima facie* evidence of theft, and it devolves upon the defendant to explain such possession so as to rebut that presumption or so as to raise a reasonable doubt in your minds of his guilt.

"If the defendant took the hogs in good faith, believing them to be his own, then he is not guilty of theft, and you should return a verdict of not guilty."

The defendant asked the following instructions:

"A preponderance of testimony in favor of the State in a criminal prosecution for theft as to the title to the property is not sufficient to warrant a conviction.

"But when there is a conflict of testimony relative to the title in order to convict the defendant of theft, the State must show beyond a reasonable doubt that the defendant took the hogs in the indictment not only unlawfully but fraudulently."

Which was refused by the judge because "sufficiently given in the general charge, so far as it applies to this case."

In the concluding argument by the district attorney it was insisted that the fact that the other witness, Wamel, acting justice of the peace, held the witness to bail, was evidence that said Wamell thought him guilty, to which the defendant objected upon the ground that the argument was not fair and legitimate, as the defendant could not reply, and appealed to the court, but the court in the presence of the jury told the district attorney to proceed.

The jury found the defendant guilty, and assessed his punishment at two years' confinement in the penitentiary;

upon this, judgment was rendered.    Motions for new trial and in arrest of judgment were overruled and defendant appealed.

*Jones, Sayers & Russell*, for appellants.

*A. J. Peeler, Assistant Attorney General*, for the State.

MOORE, ASSOCIATE JUSTICE.—Whenever the value of the property alleged to have been stolen is an element for determining the grade of the offense or the extent of its punishment, it is unquestionably necessary to allege in the indictment the value of the stolen property.    Obviously, therefore, when the difference between grand and petit larceny is distinguishable merely by the value of the property stolen, not only must its value be stated, but where several articles are stolen, unless the value of each article stolen is alleged instead of the aggregate value of the whole, if there is a failure in the proof of the larceny of some of them, a general verdict would not be justified by the evidence or warrant a judgment, because in such case the indictment would not show the value of the articles proved to have been stolen or the grade of offense of which the defendant should be adjudged guilty.    It is therefore generally customary, and is certainly more prudent, to allege the separate value of the articles stolen, rather than to charge merely their aggregate value.    Still, if the indictment is in all other respects sufficient, on sound reason it cannot be held to be defective merely because it alleges the aggregate value instead of the several individual values of the articles charged to have been stolen.    That under such character of indictments parties may escape conviction for the lesser grade of offense, is an objection to the policy, and not to the legal sufficiency of such indictments.

But while we do not think the motion to arrest the judgment on this ground should have been sustained, we think the application for a new trial should have been granted, because the verdict is not warranted by the evidence.    In

all ordinary criminal cases it is said that a general verdict of " guilty " is a finding for the State of everything which is well charged in the indictment. Thus, it finds that the defendant stole every article specified in the indictment, and that they are of the value charged. If the evidence is not sufficient to warrant these conclusions, then it cannot be said that a general verdict which imports them is justified by it or should be sustained. In this case there certainly can be no pretense that the testimony in the record will warrant the conviction of appellant for stealing the two sows. " That they came home some time about the first of July in the mark that defendant gives," which is all the testimony, is altogether insufficient to sustain the verdict as to them, is too obvious for comment. Yet the only testimony as to value was with reference to the aggregate value of all the hogs as laid in the indictment. And even as to the four barrow hogs, while there is much and strongly conflicting testimony as to which of the claimants was the owner of them, there is little, if any, credit to be given to appellant's witnesses, which warrants the belief that they were fraudulently and feloniously taken by him.

In view of the facts of this case and the issue presented by them, there was error in the charge given by the court as well in its refusal to give that asked by the defendant. When property is shown to have been recently stolen and there is no question as to its title, but the point in dispute is whether the defendant is the thief, unquestionably proof of possession of the property by the defendant shortly after it was stolen may be adduced as evidence tending to prove defendant guilty of the theft. But even then it is not strictly correct to charge the jury that mere possession of property recently stolen is *prima facie evidence* of the theft, which devolves upon the defendant the necessity of explaining such possession, so as to rebut the presumption or raise a reasonable doubt in the minds of the jury of defendant's guilt.

Such charge reverses the rule as to the burthen of proof, and transfers it from the State to the defendant. The charge in effect tells the jury, if defendant is shown to have been in possession of the stolen property, they should find a verdict against him, unless he can rebut the presumption or raise a reasonable doubt in their minds of his guilt, while the true rule is that the possession of property recently stolen is evidence against the accused, which, like all other evidence, is to be taken and considered by the jury in connection with the other testimony in the case. And unless the jury, on consideration of it in connection with the other evidence before them, are satisfied of the guilt of the accused beyond all reasonable doubt, they should acquit him. In this case there was no controversy in regard to the possession of the four barrows in question. Appellant not only admitted possession, but claimed them as his property, and supported his claim by strong testimony tending to establish its truth. Under such circumstances, the issue upon which the case should have been decided was whether the hogs, if not his property, were taken by the defendant, believing them to be his, or whether he took them fraudulently and with the intent to deprive the owner of them. This issue is clearly presented in the charge asked by appellant and it should have been given.

The character of discussion indulged in by the district attorney in his concluding address to the jury, as shown by the bill of exceptions, was not justified or warranted by the evidence in the case or what had been said by appellant's counsel, to which it is claimed to have been a legitimate response. And such line of argument should not have been insisted upon by him or allowed by the court when objected to by defendant's counsel. But whether it was, notwithstanding the charge of the court in reference to it, given at the instance of defendant, calculated to do him such injury as should, if it stood alone, require a reversal

of the judgment, need not on the present occasion be decided, as this must be done for the reasons already stated. We deem it, however, of sufficiently grave importance and so highly objectionable as to require the decided condemnation of the court. Zeal in behalf of their clients, or desire for success, should never induce counsel in civil causes, much less those representing the State in criminal cases, to permit themselves to endeavor to obtain a verdict by arguments based upon any other than the facts in the case and the conclusions legitimately deducable from the law applicable to them.

The judgment is reversed and the case remanded.

REVERSED AND REMANDED.