## PAUL McCoy v. THE STATE.

1. THEFT—CHARGE OF COURT.—A charge of the court enumerating the principal circumstances in evidence relied on as proof of recent possession of the property stolen, and instructing the jury "that the law raises from them, if unexplained, the presumption of guilt," is error, for which a new trial should have been granted.
2. RECENT POSSESSION OF STOLEN PROPERTY.—Such possession, if unexplained, is a fact to be taken with the other testimony, from all which the jury may infer guilt as a presumption of fact, not of law. Any interference with the right of the jury in drawing their own conclusions from the testimony is error.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

The facts are fully stated in the opinion.

*Mills & Lewis,* for appellant.

*George Clark, Attorney General,* for the State.

GOULD, ASSOCIATE JUSTICE.—Appellant, McCoy, and one Don Love were jointly indicted for theft of two hogs from Isaac Thompson. The evidence on which appellant was convicted is, in substance, as follows:

Thompson testified that two hogs, one black and one white, worth about $20 each, were stolen out of his pen, in the city of Galveston, on the night of November 16, 1874. He saw and fed them on the night they were taken, and missed them on getting up very early next morning. He saw where two planks had been broken off the pen, and corn scattered from the broken place in the pen to Don

Love's stable; that he met Don Love and Tom Tidings next day riding together, and told them that his hogs were gone, and asked if they had seen them; they answered "No." Has never seen his hogs since.

V. Lemmon testifies that on the night the hogs were missing, sometime after midnight, he was awakened by the dogs barking; got up and saw Don Love and Paul McCoy on horseback, in the alley behind Don Love's stable, over by Isaac Thompson's pen. McCoy was on Don Love's white horse and Don Love was on a black horse; that he was about three lots off, but the moon was shining brightly, and he saw them well.

Kate Cummings lived at Judge Love's, and on the morning Thompson's hogs were missing, two hogs, a black and a white one, were in Judge Love's yard; that Don asked permission to leave them in the yard, and did so leave them. They stayed there two days, and were then taken away in the night. Did not see who took them, but heard them catching the hogs.

H. Wright, gardener at Judge Love's, says that the two hogs got in his garden. He told Don Love about it, and he said he would take them away, and they were taken away that night.

John Kelly says that Don Love and Paul McCoy came to him together, and one or both asked him to go with them to Judge Love's and help them tie two hogs, and they would give him two bits each. He went with them to Judge Love's and helped tie the hogs and load them. It was after night.

Thomas Tidings, for the defense, says Don Love and Paul McCoy, about the time Thompson lost his hogs, brought witness two hogs, a white and a black one. They belonged to witness. Witness paid Don Love for bringing them. Witness had authorized Don Love to take up any hogs of his he might find running loose in Galveston.

This is the entire testimony.

A part of the charge of the court is as follows: "If you believe from the evidence that the hogs alleged were the property of Ike Thompson, and that they were stolen from him as alleged; that they were shortly afterwards found in the possession of the defendant, either alone or in common with any other person with whom defendant was acting; that the defendant was in the immediate neighborhood of the place from which the hogs were stolen, at or about the time of the theft, and reasonably could have committed the theft, then the law raises a presumption of guilt against him, unless the defendant has accounted for his possession innocently to himself." The jury are subsequently told that if the hogs were taken by parties not knowing the owner, and believing them to be the property of another, for whom they were getting them, or if McCoy engaged in the commission of the act, not knowing the criminal intent of his associate, then to acquit, and to do so unless they were satisfied of defendant's guilt beyond a reasonable doubt.

The possession of property recently stolen "is merely a fact or circumstance to be considered by the jury, in connection with all the other evidence submitted to them, in determining the guilt or innocence of the possessor." (Perry *v.* The State, 41 Tex., 484, and authorities there cited; Calvin Thompson *v.* The State, 43 Tex., 268; Yates *v.* The State, 37 Tex., 202; 2 Bishop's Cr. Proc., and references.)

Where the court in its charge has directed attention to the subject, by telling the jury that such unexplained possession raises a presumption of the guilt of the possessor, or is *prima facie* evidence of guilt, it has not been in many cases regarded as a material error, though it is said not to be "strictly correct." (Thomas *v.* The State, 43 Tex., 658; Calvin Thompson *v.* The State, 43 Tex., 268.)

The charge, as a whole, and in connection with the facts of the case, may show that it was neither intended nor understood as meaning that the law attached to such possession any "artificial force," beyond its natural tendency to

produce belief, under the circumstances of the case. (The State v. Smith, 2 Ired.)

Where, however, instructions of this purport are given in such a way as to "produce the impression on the jury that the guilt of the accused is a presumption, which the law requires shall be made from the fact of his being found in possession of the stolen property, instead of an inference or conclusion of their own, which they may or may not adduce from the evidence before them, as they may believe to be right and proper," the court has trespassed on the province of the jury, who, in every criminal case, are the exclusive judges of the facts. (Thomas v. The State, 43 Tex., 658; Martinez v. The State, 41 Tex., 164.)

If the facts of the case show that this error was calculated to injure the rights of defendant, and was therefore a material error, although the charge was not at the time excepted to, it constitutes a good ground for a new trial, and the refusal of a new trial in such a case will be a sufficient ground for reversal. (Paschal's Dig., arts. 3067, 3137.)

In this case the evidence shows no effort on the part of defendant to account for his possession if the hogs were Thompson's; and that qualification of the charge, on the the presumption raised by the law, was not practically important. The charge alludes to every material circumstance in evidence against defendant, and is on that account the more objectionable, more liable to be misunderstood, when it says that the law raises from them, if unexplained, the presumption of defendant's guilt. Doubtless the court regarded the subsequent part of the charge as sufficiently explaining to the jury that they were at liberty to give such weight to these circumstances as, in their judgment, they were entitled to; but we think it far from clear that the charge, as a whole, was not misunderstood, and was not, under the facts of the case, calculated to injure the rights of defendant, and it is deemed best not to sanction

what seems to be an additional error, beyond what in some former cases has not been regarded as material.

It was said, in the case of Ross *v.* The State, 29 Tex., 501, that "the line which separates the province of the judge from that of the jury is oftentimes shadowy and difficult to be traced." The remark applies to efforts by the judge to instruct the jury on the subject of the inferences arising from the possession of stolen property. It can but rarely happen that the nature of the case makes it proper that the court should charge on this, more than any other circumstance in evidence, and where such charges are given they should be so framed as to leave the jury free to weigh this and the other circumstances of the case for themselves.

As no predicate had been laid for contradicting the witness Kelly, the court correctly excluded evidence offered apparently for that purpose.

Because of the error in the charge of the court and in refusing a new trial, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.