R. E. Hatch *v.* The State.

1. Status of Case on New Trial. — The Code of Procedure explicitly enacts that when a new trial has been awarded by the Court of Appeals, the cause shall stand as though the new trial had been granted by the court below; that the effect of a new trial is to place the cause in the same position it occupied before any trial of it; and that "the former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument." These rights of a defendant are not to be overslaughed on any assumption that the new trial was obtained on a "technicality," and any attempt to deprive him of their benefit is itself a violation of law.

2. Practice. — A defendant is entitled to avail himself of every "technical" as well as substantial right accorded him by the law, and the zeal of prosecuting officers is by far the most prolific source of the errors which, by disregard of such rights, necessitate reversals and new trials. It is

the duty of the trial courts to protect prosecuting counsel from being entrapped into malpractice of this character by devices of the defence.

3. SAME — PRIVILEGE OF COUNSEL. — See the opinion *in extenso* on the scope of legitimate argument, and on the duty of the courts to enforce the law in this as in all other respects.

4. FORGERY. — Art. 439 of the Penal Code is pertinent to the making or altering of written instruments, but not, it seems, to the uttering of forged instruments.

APPEAL from the District Court of Travis. Tried below before the Hon. E. B. TURNER.

This appeal is from the second conviction of the appellant for uttering a forged instrument. A report of his first appeal will be found in 6 Texas Ct. App. 384, and in that report a statement of the material facts on which the prosecution is based. The judgment below was reversed on that appeal, and a new trial awarded. In May, 1879, a second trial was had in the court below, and resulted in the conviction from which the present appeal was taken. The opinion of the court discloses everything material to the rulings now made.

*Walton, Green & Hill*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, P. J. When the case here presented was before us on a former appeal, it was reversed upon three grounds : 1. The refusal of the court to grant the defendant's application for a continuance. 2. The refusal of the court to give in charge to the jury a special instruction asked by defendant. 3. The overruling of defendant's motion for a new trial. 6 Texas Ct. App. 384. Each of these errors was deemed by us of vital importance at the time, and a review of the rulings upon them, as enunciated in the opinion, only tends to confirm and strengthen the conviction then entertained, that the judgment, on account of the

gravity of these errors, was illegal, and could and should not have been permitted to stand.

We are led to make these remarks prefatory to a discussion of the main error relied on as ground of reversal of the case on this second appeal, and which error is pointed out in defendant's first bill of exceptions as follows, after stating the case : "Be it remembered, that during the progress of the trial of the above entitled case, after the evidence had been closed, and after the jury had been addressed by the county attorney, E. T. Moore, and had also been addressed by W. M. Walton, N. G. Shelley, and Beverly Matthews, Esqs., for the defence, Thomas E. Sneed, Esq, proceeded to address the jury, and after proceeding at considerable length, used the following language in substance : ' The truth is, gentlemen of the jury, that the defendant, Hatch, signed the name of George W. Jenkins to this transfer in pencil, which has been traced in ink by some other person since ' (meaning the instrument charged in the indictment to be forgery). And then the counsel proceeded, after the ground for above bill was taken and granted : ' Yes, take your bill, and as often as this case is taken to the Court of Appeals, and there reversed on some foolishness or technicality, I will, as often on a new trial as I can get the case before twelve honest men, convict him (defendant) again and again,' and then repeated said language quoted above, and added : ' Take bill and repeat them ;' and being called to order by defendant's counsel, and exception taken to the language used, and the bill being granted, and being admonished by the court to speak to the jury from and on the evidence alone, counsel proceeded in his address to the jury, and used the following language in substance, if not in exact words : ' I mean to deal with these fellows (meaning men who had been indicted for complicity in land frauds), and commence with this one (meaning the defendant, Hatch), that when they know themselves to be guilty, and when they, as has this defendant, been once fairly con-

victed by twelve honest men, and by a dodge and technicality had the case reversed, and now represented by able counsel, watching for an error, I will teach them to throw themselves on the mercy of the jury and the court, and not make defences which cost the State thousands. I demand of the jury, in the event you find the defendant guilty, that he be punished by the maximum of years allowed by the law. He is defending and procuring the reversal of this case, that in the progress of time witnesses may be scattered ; and that, too, when he knows he is guilty as hell itself. A taste should be put in his mouth in the shape of ten years' punishment, and then the next land-thief who is tried will plead guilty, and throw himself on the mercy of the court and jury.' The defendant objected, setting forth at length his grounds of objection ; and the court allowed, signed, and certified his bill of exceptions, with the following statement, viz. : ' I deem it proper to state, in connection with this bill, that unusual caution was used by defendant's counsel, and frequent interruptions were made to the argument of counsel, and that when allusion was made by counsel to the action had in the case resulting in a reversal I reproved the counsel and called him to order, and I further directed counsel to speak to the evidence in the case, and told the jury to disregard any and all statements made by counsel except as the same related to the evidence, or such as were the deductions drawn from the evidence in the case. E. B. Turner, judge presiding.' "

Our statutes provide that where a new trial has been awarded by the Court of Appeals, the cause shall stand as it would have stood in case the new trial had been granted in the court below. Pasc. Dig., art. 3216 ; Rev. Stats., Code Cr. Proc., art. 876. And " the effect of a new trial is to place the cause in the same position in which it was before any trial had taken place. *The former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument.*" Pasc. Dig., art. 3139 ; Rev. Stats., Code Cr. Proc., art. 783.

There can be no mistake as to the meaning of the words used, or the intention of the Legislature in prescribing that upon a second or new trial in a criminal case a "former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument." Men are oftentimes convicted illegally, and in contravention of some important right conferred by law, and it would be not only unjust but inhuman to claim that such a conviction should weigh a single particle in the estimation of their guilt upon another trial. The fact that the former conviction has been set aside and a new trial awarded, even if done upon grounds merely "technical," or upon grounds which, in the estimation of some, may appear "foolish," does not in the slightest alter the rule, nor the reason of the rule. Every defence which the law permits to a party charged with crime, every shield which the State throws around a citizen when she seeks to hold him amenable to her violated law, every right guaranteed to him, are in a certain sense and to a certain extent "technical," and may, in the estimation of some, be mere "stumbling-blocks" in the way of justice, and "foolishness" in the way of a speedy enforcement of the law; just as the doctrines of Christianity at first were to the Jews a stumbling-block and to the Greeks foolishness. Yet they are rights, nevertheless, such as a defendant may always take advantage of so long as the law recognizes his right to do so, and any attempt to abrogate or deprive him of them is itself a violation of law, because they are as much a part and parcel of the law of criminal procedure as is the crime defined and punishment denounced. "Hence it is," says Mr. Bishop, "that before any person can be made to suffer for a crime, he must be caught and held in the exact meshes which the law has provided; or, in other words, he must be proceeded against step by step, according to the rules of procedure which the law has ordained. It is of no avail to proceed against him according to other and better rules; the law's rules must be pursued, or the

law's penalties cannot be imposed upon him for his crime."
1 Bishop's Cr. Proc. (2d ed.), sect. 89.

A defendant has the right to avail himself of every "tech-
nical," as well as substantial, right which the law accords
him.   And "with every disposition on the part of judges
to enforce the law," so as to render certain the guilt of
those convicted, "the effort frequently fails because some-
thing is done or omitted which contravenes some arbitrary
or technical right of the prisoner.   Courts have no power
in criminal cases to affirm a judgment merely because the
judges are persuaded that upon the merits of the case the
judgment is right.   If any error intervenes in the proceed-
ing, it is presumed to be injurious to the prisoner, and
generally he is entitled to a reversal of the judgment; for
it is his constitutional privilege to stand upon his strict legal
rights, and to be tried according to law.   And yet it very
often happens that the matter of exception taken by him
serves no other purpose than to defeat justice."   *The Peo-
ple* v. *Williams*, 18 Cal. 187.

In almost nine cases out of every ten, prosecuting officers,
carried away by their zeal to convict, are themselves to
blame that mere technical errors, sufficient to render neces-
sary a reversal of a cause, are suffered to inject themselves
into the proceedings on the trial.   A more notable illustra-
tion of the truth of this assertion could scarcely be found
than that exhibited in defendant's first bill of exceptions,
copied above.   It may be, as we infer was his opinion from
the explanations furnished us by the presiding judge, that
the skilful counsel for defendant, by such constant inter-
ruptions and objections, had the purpose in view, and were
seeking to entrap the able counsel employed in the prosecu-
tion by the State into some such intemperance of language
and gross violation of the law as was indulged in by him.
He should have been on his guard against, and prepared to
resist, all such attempts.   Instead, however,—and no doubt,
as we infer from the learned judge's explanation, by way, it

seems to us, of apology for him,—he was by such arts and devices (which, by the by, his honor should have protected him against) goaded into a perfect frenzy of irritation, which for the moment rendered him wholly oblivious or totally reckless of the consequences to follow. Still, this does not extenuate or excuse the error. Counsel for the defendant, though such a course is not to be commended, can scarcely be blamed if by such means, when permitted by the court, they are enabled so easily to succeed in the accomplishment of their intended purpose. An attorney for the defence has the right, when permitted to do so by the court, to use all the means in his power, consistent with law and professional propriety, to obtain his client's acquittal. Mr. Bishop says: "There is no higher obligation resting on man, than that which sometimes compels a lawyer to use his legal powers for the defence of one whose course of life he loathes, and whom he deems guilty of the very crime of which he seeks to obtain an acquittal. The right of every person to go unpunished until not only the crime has been committed, but he has been formally convicted of it, after making every defence which any other person is entitled to make, is one of the main pillars on which rest our liberty, and our security in the pursuit of happiness." 1 Bishop's Cr. Proc., sect. 309.

It was the duty of the court to protect the prosecuting officer from such frequent and unnecessary interruptions of counsel, even to the extent of using his full power in the premises if necessary to prevent it. But here it does not appear either that the officer claimed or the court interposed to protect him from these interruptions. That counsel for the defence had the right to object and reserve a bill of exceptions to any argument made by the prosecuting officer upon facts not in evidence, will not, we suppose, be for a moment questioned. This is all which the bill of exceptions discloses he was proposing to do, when the vehement and vituperative language complained of was indulged in with

regard to the former trial and conviction. The judge says that when allusion was made to the former trial he reproved counsel and called him to order. This, however, does not appear to have had the desired effect, if indeed any effect at all; on the contrary, he iterates and reiterates what he has already said, and adds language much more reprehensible, if possible, in his denunciation both of the prisoner and the former reversal of his case, and again defiantly tramples under foot the statute, which, as we have seen, expressly prohibits any and all such allusions.

This statute either means something or it means nothing. If it means anything, then its violation is an injury done to the rights of the defendant, for which the judgment in this case should and must be reversed.

It was said by the court in *Tucker* v. *Henniker*, 41 N. H. 317 : " It is irregular and illegal for counsel to comment upon facts not proven before the jury as true, and not legally competent and admissible as evidence. The counsel represents and is a substitute for his client; whatever, therefore, the client may do in the management of his case may be done by his counsel. The largest and most liberal freedom of speech is allowed, and the law protects him in it. The right of discussing the merits of the cause, both as to the law and the facts, is unabridged. The range of discussion is wide. He may be heard in argument upon every question of law. In his addresses to the jury it is his privilege to descant upon the facts proved or admitted in the pleadings; to arraign the conduct of parties; impugn, excuse, justify, or condemn motives, so far as they are developed in evidence; assail the credibility of witnesses when it is impeached by direct evidence, or by the inconsistency or incoherence of their testimony, their manner of testifying, their appearance on the stand, or by circumstances. His illustrations may be as various as the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wings to his imagination.

"To his freedom of speech, however, there are some limitations. His manner must be decorous. All courts have power to protect themselves from contempt, and indecency in words or sentiments is contempt.   *   *   * When counsel are permitted to state facts in argument and to comment upon them, the usage of courts regulating trials is departed from, the laws of evidence are violated, and the full benefit of trial by jury is denied."

And so in *Brown* v. *Swineford*, 44 Wis. 232, the following appropriate language upon this subject is used by the court : —

" The profession of the law is instituted for the administration of justice. The duties of the bench and bar differ in kind, not in purpose. The duty of both alike is to establish the truth and to apply the law to it. It is essential to the proper administration of justice, frail and uncertain at the best, that all that can be said for each party, in the determination of fact and law, should be heard. Forensic strife is but a method, and a mighty one, to ascertain the truth, and the law governing the truth. It is the duty of the counsel to make the most of the case which his client is able to give him ; but counsel is out of his duty and his right, and outside of the principle and object of his profession, when he travels out of his client's case and assumes to supply its deficiencies. Therefore is it that the nice sense of the profession regards with such distrust and aversion the testimony of a lawyer in favor of his client. It is the duty and right of counsel to indulge in all fair argument in favor of the right of his client ; but he is outside of his duty and his right when he appeals to prejudice irrelevant to the case. Properly, prejudice has no more sanction at the bar than on the bench. But an advocate may make himself the *alter ego* of his client, and indulge in prejudice in his favor. He may even share his client's prejudices against his adversary, as far as they rest on the facts in the case. But he has neither the duty nor right to appeal to prejudices, just or unjust, against the adversary, *dehors* the very case he has

to try.  The very fullest freedom of speech, within the duty of his profession, should be accorded to counsel ; but it is license, not freedom of speech, to travel out of the record, basing his argument on facts not appearing, and appealing to prejudices irrelevant to the case and outside of the proof."

We might cite many other authorities to the same effect, but will content ourselves with making the following extract from the opinion of our Supreme Court in *Thompson* v. *The State*.  Moore, J., commenting upon the character of discussion indulged in by the district attorney in his concluding address to the jury, says : " We deem it, however, of sufficiently grave importance, and so highly objectionable, as to require the decided condemnation of the court. Zeal in behalf of their client, or desire for success, should never induce counsel in civil causes, much less those representing the State in criminal cases, to permit themselves to endeavor to obtain a verdict by arguments based upon any other than the facts in the case, and the conclusions legitimately deducible from the law applicable to them."  43 Texas, 268.

We do not propose to discuss any of the other errors complained of, they not being, in our opinion, of vital or material importance.  The first portion of the charge of the court, in so far as it treats of the making and forging of the instrument, may be calculated to confuse and mislead the jury ; though, in applying the law directly to the case, the court did limit their investigation to the charge of uttering the forged instrument, that being the crime for which the State claimed a conviction.  Art. 439, Penal Code, is hardly applicable to a charge of uttering a forged instrument.

The judgment of the court is reversed and the cause remanded for a new trial, because of the character and course of argument indulged in by the counsel in the closing address to the jury.

*Reversed and remanded.*