## WILLIAM JOHNSON *v.* THE STATE.

1. THEFT — RECENT POSSESSION — NEW TRIAL.— Recent possession of the animal alleged to be stolen was the only criminative fact relied upon by the State to convict the defendant of horse-theft. His explanation of his possession was that he purchased the animal in good faith from one S. H., and it was shown by the State that one S. H. had lived in the county but had moved off. *Held*, that such explanation of the defendant's possession was reasonable, and it devolved upon the State to prove its falsity in order to sustain a conviction. No such proof being made or attempted, the court should have granted a new trial.

2. SAME — EVIDENCE.— See evidence held insufficient to support a verdict for horse-theft, for which reason, also, a new trial should have been granted.

APPEAL from the District Court of Coleman. Tried below before the Hon. W. A. BLACKBURN.

The indictment charged the defendant with the theft of a mare, the property of some person unknown to the grand jury. The trial resulted in conviction, with a five years' term in the penitentiary assessed as punishment.

J. R. Jackson testified for the State that he knew the defendant and the mare mentioned in the indictment. She was a black mare about five years old, and had no brands on her that the witness had ever discovered. About the last of July or the first of August, 1877, the mare came to the witness's place in Coleman county, Texas, being at that time a yearling colt. She was not branded at that time. She continued to range and stay around the witness's place, with his stock, from that time until the fall before this trial. The witness regarded this animal as an estray, and she was so known and recognized in the neighborhood where she ranged. The witness did not then nor does he yet know who was the owner of the animal. In looking after his own stock the witness made inquiry of stockmen concerning this mare, but failed to find out who owned her. The defendant, in November, 1880, lived about two or three miles from the residence of the witness. In that month the witness saw this mare tied out back of a field, some two hundred or two hundred and fifty yards from the defendant's house. The witness went from Mr. Spalding's molasses mill to the house of a Mr. Savage, to get a barrel, and on his return to Spalding's he passed near the defendant's house, and saw the mare tied out behind the field. She then had a colt. The witness recognized this animal as the same black mare which had been running with his stock for several years. When the witness got back to Spalding's mill he found the defendant there, and told him that he had seen the mare tied out behind the field. He

asked the defendant if he knew who took the mare up, and the defendant answered that he did. The witness then told him that the mare was an estray and had been running with his horses for several years. The defendant replied that he had ·purchased her from Sam Harrell. The witness did not remember whether or not he said anything to the defendant in that conversation about the colt that was with the mare. Subsequently the defendant asked the witness if the colt belonged to the mare. This all occurred in Coleman county, Texas, after Sam Harrell had moved from the county.

On cross-examination the witness stated that he had never seen the defendant in possession of the animal. The defendant told the witness that he had purchased the mare from Sam Harrell, and had a bill of sale for her. The colt that was with the mare when the witness saw her tied up behind the field was about a year old. He had seen the mare on the range once or twice since, and once at the lick-log near his house, with his horses. He had not seen the colt since it was at his house with the mare.

Moses Jackson testified, for the State, that he knew a black mare without brands, which at one time ran with J. R. Jackson's horses in Coleman county. He did not know who owned her. She was recognized in the neighborhood as an estray. The witness saw this mare on the range some time during the year 1880. She had with her at that time a six months' old colt. He had never seen the mare in the possession of the defendant.

Taylor Smith testified that he saw the defendant with a black mare in his possession several times during the fall and winter preceding this trial. She was not then branded, so far as the witness could see. He saw the mare frequently about the defendant's place in Coleman county, Texas, and the witness thought that he had seen the defendant working her. The defendant had but one

black mare during the period mentioned, that the witness knew anything about.

On cross-examination the witness stated that he did not, of his own knowledge, know that the mare for the theft of which the defendant was being prosecuted was the same animal which he saw in the defendant's possession during the last winter, but, after he had seen the mare in his possession, defendant's brother, James Johnson, told the witness that she was the animal about which the fuss was being made. James Johnson was riding the mare when this conversation occurred. The witness was tolerably well acquainted with the range about J. R. Jackson's, and had been through it several times. He did not remember that he had ever seen this mare upon that range. He may or may not have seen her.

Will Faris testified that about four years before this trial he saw an unbranded black yearling colt with his horses on the range in Coleman county. This was the first time he saw her. The next time the witness saw her, as well as he could remember, she was running with J. R. Jackson's horses, and was still unbranded. She then had a colt about four months old. The witness did not remember having seen the mare but twice. He did not know to whom she belonged. He regarded her as an estray.

Cross-examined, the witness stated that he had never seen the animal in the possession of the defendant. He did not remember when it was that he last saw the animal, but it was some time during the year 1880.

Frank Rucker testified that, in the spring of 1880, he saw a black mare and colt with Mr. Faris's horses on the range in Coleman county, Texas. The mare was unbranded. The witness did not know to whom she belonged. He regarded her as an estray, but did not know that she was. During the fall of 1880, the witness saw an unbranded black mare in the defendant's pasture.

He saw no colt with her at that time. The witness did not know that the black mare he saw in the defendant's possession was the same animal he saw with the colt on the range during the preceding spring.

The State next introduced the defendant's application for a continuance. The application was based upon the absence of J. B. Hooten of Coleman county, by whom the defendant proposed, if he was granted a continuance or postponement, to prove the handwriting of Sam Harrell to an unacknowledged bill of sale conveying to him the mare in question.

J. R. Kuling was the first witness introduced by the defendant. During the month of November, 1880, the witness was at the molasses mill of R. L. Spalding in Coleman county, Texas, and while there he heard J. R. Jackson ask the defendant about a black mare which was then staked out between the mill and the house of a Mr. Savage. The defendant told Mr. Jackson that he had taken the mare up, that he had purchased her from Sam Harrell, and that he had Harrell's bill of sale conveying the mare to him. The witness was of opinion that Mr. Jackson, in that conversation, said something about the mare having a colt. The witness had never, to his recollection, seen the mare in question. This witness stated on his cross-examination that Jackson told the defendant where he had seen the mare staked out, back of the field; whereupon the defendant told Jackson that he had taken her up, that he had purchased her from Sam Harrell and that he had Harrell's bill of sale conveying the animal to him. This was some time after Harrell had moved out of the settlement. The recollection of the witness was that in this conversation with the defendant, Jackson told him him that the colt was with the mare.

R. L. Spalding testified for the defense that in November, 1880, he and the defendant lived about one-half a mile apart in Coleman county, Texas. The road leading

from the witness's house to the house of Mr. Savage runs within about two hundred yards of the defendant's house. The witness heard nothing of the conversation between J. R. Jackson and the defendant about the mare, which is said to have occurred at the molasses mill on the witness's place, in November, 1880.

B. F. Rose testified for the defense that some time during the spring of 1881 he saw and examined a black mare in the defendant's possession. She was a young animal, and in the opinion of the witness had never given birth to a colt. He did not remember whether or not the animal was then branded, nor does he know that she was the same animal for the theft of which the defendant was now on trial. The witness would not state positively that the mare he saw in the possession of the defendant had never had a colt. It was his opinion that she had not, but he might have been mistaken.

*H. T. Sims*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

Hurt, J. The appellant was convicted of the theft of a mare. He moved for a continuance of the case; which motion was overruled. In his motion for a new trial this ruling of the court was made a ground for a new trial. We are of the opinion that a new trial should have been granted.

The only criminative fact against defendant was recent possession of the mare, an estray. This was explained by defendant, he stating that he had purchased the mare from one Sam Harrell. The State proved that there was such a man as Sam Harrell, and that he had lived in that county, but had moved off. That this explanation was reasonable cannot be questioned. This being the case, to convict, the State (relying upon recent possession alone) must prove this explanation false; to do

this there was no attempt made whatever. *Perry* v. *State*, 41 Texas, 483; *Thompson* v. *State*, 43 Texas, 268; *McCoy* v. *State*, 44 Texas, 616; *Hannah* v. *State*, 1 Texas Ct. App. 578; *Garcia* v. *State*, 26 Texas, 209.

The verdict of the jury was not supported by the evidence, and upon this ground also a new trial should have been granted. (The Reporters will give the evidence.)

The judgment is reversed and the cause remanded.

*Reversed and remanded.*