[No. 1663.]

## ROLAND DUREN v. THE STATE.

1. THEFT—INDICTMENT—OWNERSHIP.—Where one person has a general property in the thing stolen, and it has been taken from another who has the possession, charge and control of the same, an indictment for theft may allege the ownership to be in the latter. Note the opinion for facts in proof, *held* not to show a variance with the allegation of ownership made in the indictment.

2. SAME—EVIDENCE.—This court will not interfere with the verdict of a jury upon a question of possession when the same turned upon a mere conflict of evidence.

3. SAME—CONSENT—PRACTICE.—It is a general rule that, when the property stolen is owned by two persons, the proof must show the want of consent of both to the taking. This rule, however, does not apply in a case where the joint owner whose want of consent is not proved is shown to have been a *particeps criminis*. See this case in illustration.

4. SAME.—Where an owner or joint owner of property in the possession of another is disqualified by any of the provisions of Article 730 of the Penal Code from taking possession of the same, he cannot, by consent, delegate to another person the right to take the property, and the consent of such owner or joint owner cannot affect the amenability of the taker for theft of the property from the person in possession.

5. SAME—PENALTY.—The information charged the theft of two hundred pounds of cotton of the aggregate value of six dollars, and the proof showed the theft of seventy-five pounds of the aggregate value of three dollars. It is insisted that this variance is fatal to the conviction, in as much as the proof should correspond with the allegation. But *held*, that, inasmuch as the information and conviction were for a misdemeanor, the objection is not well taken. The rule would be otherwise, if the value of the property stolen could affect the grade or punishment of the offense.

APPEAL from the County Court of Burleson. Tried below before the Hon. John Alexander, County Judge.

The information charged the appellant with the theft of two hundred pounds of seed cotton, the property of Henry Hodges. The venue was laid in Burleson county, and the offense was alleged to have been committed on the seventeenth day of August, 1882. A verdict of guilty was returned against him, and his punishment was assessed at a fine of ten dollars and confinement in the county jail for a period of twenty-four hours.

Henry Hodges was the first witness for the State. He testified that on the night of August 17, 1882, he was watching his cotton pen in Burleson county, in which he had some seed cotton stored. He saw the defendant and Ambrose Clark walking barefoot toward the pen, and saw them enter the pen together. Witness then went to the pen and caught them taking cotton. One of them was holding the sack and the other was filling it with cotton. They had two sacks. One was empty; the other contained about seventy-five pounds of cotton of the value of three dollars. The cotton was the property of the witness, was in his possession, and neither the defendant nor Clark had witness's consent to take the same, or any part of it. The understanding respecting the cotton was that it was to be under the control of the witness until he was paid. The cotton pen and house in which Martin Williams lived were not on the land cultivated by Williams and Clark, but were in another part of witness's field.

On cross-examination the witness stated that the cotton was raised on his farm by Martin Williams and Ambrose Clark. The land upon which it was raised was rented by witness to Williams, under a contract giving to witness a half of the crop. Ambrose Clark helped cultivate the land and owned an eighth interest in the crop. After witness rented the land to Williams, Williams made an arrangement with Clark whereby, for helping to cultivate the land, Clark became the owner of a one-fourth interest in Williams's half. Williams and Clark were both indebted to witness for fines witness had paid for them, and witness had a lien on their cotton. The pen was one which witness allowed Williams and Clark for the purpose of storing cotton, and it was being stored in that pen as it was gathered. Witness considered the cotton his because Williams and Clark both owed him, and their mutual understanding was that witness was to be paid out of the cotton. The cotton had not been divided, and there had been no settlement between the parties. On the same morning, and before witness detected the defendant and Clark taking the cotton from the pen, he tried to purchase Clark's interest in the cotton, but Clark would not sell. Witness got Williams to try to make the trade with Clark for him. Since the institution of this prosecution witness had purchased Clark's interest in the cotton.

Martin Williams testified, for the State, that he was not at the cotton pen when Hodges caught the defendant and Clark taking

40

the cotton, but came up while they were there. The cotton was raised by witness, his wife, another woman, and Clark. Clark had an eighth interest in the cotton. The cotton was in the possession of the witness, and neither defendant nor Clark had his consent to take any part of it. Witness and Clark both owed Hodges, and witness considered that the cotton belonged to Hodges, as the understanding was that he was to be paid out of the first cotton gathered. Hodges got witness to watch the pen at night, but witness had gone from home that night. Defendant and Clark left their shoes in a field some distance from the pen, when they went to get the cotton. Witness went with them to get their shoes after they were arrested.

On cross-examination the witness stated that Hodges was to be paid when the cotton was gathered. Neither Clark nor witness had ever had a settlement with Hodges. They had neither turned the cotton over to Hodges nor agreed upon any price. Hodges had neither given them credits on account nor any receipt for cotton. The cotton taken was in the seed, and was to be ginned, baled and turned over to Hodges. On the same evening, and before the defendant and Clark were caught in the pen, the witness, at the instance of Hodges, made an effort to purchase Clark's interest for Hodges, but Clark declined to sell. Since this prosecution has been instituted witness had bought Clark's interest for Hodges. Clark and witness owed Hodges for fines Hodges had paid for them at the beginning of the year, and the understanding between the parties was that Hodges was to be paid out of the cotton. Witness considered that the cotton belonged to Hodges, though there had been no settlement.

The motion for new trial, raising the questions discussed in the opinion, was overruled.

No brief for the appellant has reached the Reporters.

*J. H. Burts*, Assistant Attorney General, for the State.

WILLSON, JUDGE. Defendant was convicted under an information charging him with the theft of two hundred pounds of seed cotton, of the value of six dollars, the property of Henry Hodges. It is contended by the defendant on this appeal that there is a material and fatal variance between the allegation of the ownership of the cotton and the proof of such ownership as made upon the trial.

Bearing upon this question of ownership the evidence is substantially as follows: Hodges rented certain land to one Williams, and was to receive for the rent thereof one-half the cotton crop raised thereon. Williams took into partnership in the cultivation of the land one Clark, who was to have an interest in said cotton crop, of one-eighth. A portion of the cotton crop raised upon the land had been gathered and placed in a pen situated upon the land of Hodges, but upon different land from that which he had rented to Williams. It was a portion of this cotton so gathered and penned that was alleged to have been stolen. Williams and Clark were both indebted to Hodges, and it was understood between the parties that Hodges was to receive his pay out of this cotton, and that the said cotton should belong to him until said indebtedness had been paid. There is some conflict of evidence as to whose possession the cotton was in at the time it is alleged to have been stolen. Hodges testified that it was in his possession. Williams testified that it was in his possession, but that he considered it as belonging to Hodges; and Williams further testifies that Hodges had employed him to watch the cotton and prevent it from being stolen. We conclude from this state of evidence that Hodges, although there had been no division of the cotton and no settlement of accounts between the parties, was nevertheless the special owner of the cotton, the interest therein of Williams and Clark being pledged to him as security for their indebtedness to him. So far as the question of possession is concerned, the evidence being conflicting, we would not disturb the conviction. Although Williams and Clark may have been the general owners of the property, yet, if Hodges had the possession, charge and control of the same, the allegation of ownership in the information would be sustained. (Code Crim. Proc., Art. 426.)

Again, it is contended by the defendant that, as Clark was one of the owners of the cotton, it was necessary to prove his want of consent to the taking of the same. As a general rule this proposition is correct; but in this case the evidence shows that Clark was a principal with the defendant in the taking of the cotton; and it further shows that such taking was by stealth and undoubtedly fraudulent on the part of both Clark and defendant. It is provided by statute as follows: "No person can be guilty of theft by taking property belonging to himself except in the following cases: 1. Where the property has been deposited with the person in possession as a pledge or security for debt."

"4. In all other cases where the person so deprived of possession is, at the time of taking, lawfully entitled to the possession thereof as against the true owner." (Penal Code, Art. 730.) Now, if, as we conclude from the evidence, this cotton was pledged to Hodges by Williams and Clark, to secure their indebtedness to him, then Clark had no right to take possession of the same, or any part thereof, until his said indebtedness had been paid. Having no right himself to take the same, he could not authorize the defendant or any one else to do so, and his consent to the taking could not of itself affect the question of the guilt of the defendant. We are of the opinion, therefore, that it was not essential in this case for the State to prove the want of Clark's consent to the taking of the cotton.

It is further insisted by the defendant that, as the information alleged the aggregate value of the two hundred pounds of cotton to be six dollars, the proof must correspond precisely with this allegation, and that it is not sufficient that the proof shows the theft of only seventy-five pounds of cotton of the value of only three dollars. If this were a case in which the value of the property could affect the grade or punishment of the offense, we would hold this position to be well taken. Thus, if the indictment had charged the theft of several articles of property, of an aggregate value of more than twenty dollars, and the evidence had established the theft of only a portion of the articles, a conviction upon such a state of proof of a felony could not be maintained, because such proof would leave it uncertain as to whether the offense was a misdemeanor or a felony. (*Thompson* v. *The State*, 43 Texas, 268; *Ware* v. *The State*, 2 Texas Ct. App., 547; *Doyle* v. *The State*, 4 Texas Ct. App., 253.)

In this case, however, the value of the property can have nothing to do either with the grade or the punishment of the offense. The defendant was charged with a misdemeanor and could not be convicted of a felony.

Finding no error in the judgment, the same is affirmed.

*Affirmed.*