[No. 3096.]

## J. F. Bryant *v.* The State.

1. Theft—Indictment—Arrest of Judgment.—Indictment for theft described the stolen property as "one twenty dollar gold piece of the value of twenty dollars, current money of the United States, and one five dollar bill in money of the value of five dollars, and one pocket knife of the value of fifty cents, of the corporeal personal property of J. W. McKnight." The motion in arrest of judgment alleged the insufficiency of the description of the alleged stolen property. *Held*, sufficient, under Article 732 of the Code of Criminal Procedure, which declares "money" to be "property," and under Article 427 of the same Code, which provides that, "when it becomes necessary to describe property of any kind in an indictment, a general description of the same by name, kind, quality, number and ownership, if known, shall be sufficient." The motion in arrest of judgment was properly overruled.

2. SAME—POSSESSION OF RECENTLY STOLEN PROPERTY—CHARGE OF THE COURT.—The trial court charged the jury as follows: "Possession of property recently stolen is evidence against the accused, which, like all other evidence, is to be taken and considered by the jury in connection with other testimony in the case." *Held,* that exception to the charge was well taken, inasmuch as in charging upon this evidence, separate and apart from the other evidence in the case, the court gave to it undue prominence; and particularly was it error to charge positively that such evidence was *against* the defendant.

3. SAME.—The true rule on the subject is that "the possession of property recently stolen is merely a fact or circumstance to be considered by the jury in connection with all the other evidence submitted to them, in determining the guilt of the possessor."

4. SAME.—Nor is it always that the possession of recently stolen property is evidence *against* the possessor. It is always admissible evidence in a trial for theft, but it is for the jury and not the judge to say whether it is or is not against the defendant. Moreover, when it is evidence against the defendant, it is not of itself, unaided by other evidence, sufficient to support a conviction; and the court further erred in refusing to so charge, when requested.

5. SAME.—CIRCUMSTANTIAL EVIDENCE being alone relied upon by the State, the court charged as follows: "In order to convict upon circumstantial evidence, the circumstances must be so connected as to exclude every reasonable hypothesis but the guilt of the defendant." Exception that the charge as given was not full and explicit enough to enable the jury to properly understand and apply the rule governing circumstantial evidence, was well taken, especially when shown that the principal State's witness was intoxicated at the time of the theft.

APPEAL from the District Court of Rains. Tried below before the Hon. G. J. Clark.

The appellant was charged by indictment with the theft of twenty-five dollars in money, and a pocket knife, the property of J. W. McKnight, in Rains county, Texas, on the seventeenth day of March, 1884. The trial resulted in a verdict of guilty, and a term of two years in the penitentiary was the punishment awarded.

J. W. McKnight was the first witness introduced by the State. He testified that he lived in Quitman, Wood county, Texas. He knew the defendant, and had known him for four or five years in Rains county. The witness was in the town of Emory, Rains county, on or about the seventeenth day of March, 1884, and stopped at the Montgomery hotel. He lost some property on Monday. It consisted of a twenty dollar gold piece, a five dollar greenback bill, three dollars in silver and a pocket knife.

J

This property, the witness thought, was lost at the hotel. The witness was all about and around town in the forenoon of that day, with a party of gentlemen, including the defendant. Witness was at the two saloons, and on several occasions drew out his money, with the remark that he was not yet broke. The witness was drinking. The defendant left Coke's saloon with the witness, went with him to the hotel, and took dinner with witness. After eating a while the witness dropped into a slumber at the table. He, however, was not asleep, for he heard Mrs. Eliza Montgomery tell the defendant to take the witness up stairs and put him to bed. Defendant did so. Witness did not remember who was at the table when he and defendant left it to go up stairs. Having got up stairs with defendant, the witness pulled off his pantaloons, threw them on a chair that stood three or four feet from the bed, dropped over on the bed and went to sleep. The money described by witness was in his pantaloons pockets when he threw them on the chair. This the witness knew, because he heard it rattle. The defendant at that moment was at the door, leaving the room.

The witness did not know how long he lay asleep in this up-stair room, but when he got up, his twenty-eight dollars, gloves and pocket knife were gone. He went up to the saloons and inquired if any of the boys had his money. Here the witness was shown a five dollar greenback, which he pronounced to be the bill taken from him. He identified the bill by its being torn and plastered across one end. He had no other means of identifying it. It was a bill which had been given him on the morning of the theft by H. W. Martin, to be used by witness in paying Martin's taxes in Wood county. When Martin gave it to him, about nine o'clock that morning, witness placed it in his pocketbook. The witness had never since seen the twenty dollar gold piece nor the one dollar silver pieces, but, on the evening after the theft, he saw the defendant whittling with the knife that was taken from him at the same time that the money was taken. Witness had never said that he believed some person other than the defendant had the money, and he had never said that he thought he left it with Jim Hicks, the barkeeper at Coke's saloon. The gold piece and greenback bill were in the same pocketbook in the witness's pocket, and the three dollars were loose in the pocket.

Oscar Dick testified, for the State, that he knew both the defendant and the prosecuting witness, McKnight. He saw them

together in the saloon on the day of the alleged theft. McKnight was drinking somewhat; showed his money very freely, with the remark that he was not yet broke. He went off with the defendant about twelve o'clock. The witness did not know where they went to. McKnight came back to the saloon some time after dinner, and inquired for his money, saying that he had lost it, and that he thought he had given it to Jim Hicks. Witness told him that possibly he had let Jim Forbis have it, and he left, to hunt Forbis. Witness stayed at Coke's saloon with Jim Hicks. The witness saw McKnight in Coke's saloon, before dinner on that day, with a twenty dollar gold piece and three dollars in silver. When witness saw this money, McKnight was waving it around, declaring that he was not broke. He had some money loose in his pocket. In his pocketbook, which he carried in his hip pocket, he had the twenty dollar gold piece and some greenback money.

James Hicks, barkeeper at Coke's saloon, testified, for the State, that he saw McKnight and the defendant together in Coke's saloon on the morning of the alleged theft. McKnight was drinking somewhat in that saloon. Witness did not know how much he had drunk elsewhere. McKnight was showing his money around, but witness took little notice of him, being busy, as it was pay day with tie cutters, a great many of whom were in the saloon. The defendant left the saloon with McKnight about twelve o'clock, going, the witness believed, to the Montgomery House, where McKnight took his meals, and where the defendant lived, as a solicitor for the hotel. Witness saw McKnight after dinner. He was inquiring for his money, which he said that he had lost.

James Forbis was the next witness introduced by the State. He testified that he saw the defendant in the town of Emory on the seventeenth day of March, 1884. He saw Mr. McKnight there on the same day. McKnight seemed to be drinking, and was showing money around. He had, according to the witness's recollection, a twenty dollar gold piece, a five dollar greenback bill, and three dollars in silver.

H. W. Martin testified, for the State, that on the morning of the seventeenth of March, 1884, in the town of Emory, Rains county, Texas, he gave the prosecuting witness McKnight a five dollar greenback bill, with which to pay his, witness's, taxes in Wood county. The bill identified by McKnight being shown to the witness, he said that he could not recognize it as the same,

as he did not recognize the number. He remembered, however, that the bill he gave McKnight had a bright, new appearance, like the one exhibited, and was torn and pasted across the end, like the bill introduced in evidence. Witness got the bill from J. W. Humphreys. He did not consent to the taking of the same by the defendant.

Mrs. Eliza Montgomery testified, for the State, that Mr. McKnight, the prosecuting witness, took dinner at her hotel on the seventeenth day of March, 1884. She did not remember who ate dinner with McKnight. The defendant did not come to dinner until some time after McKnight did, and was not near McKnight during the meal. There were three young men at the table at the time that McKnight ate his dinner. The witness was of the opinion that James Hicks did not take dinner at her house on that day. Witness's servant told her that McKnight went to sleep at the table. The defendant told witness that he conducted McKnight to a bed room upstairs.

W. N. Motes testified, for the State, that he received the five dollar bill on exhibition from the defendant, between eleven and twelve o'clock, on the seventeenth day of March, 1884, giving him silver for it. Witness knew the bill in evidence to be the same, by its being torn and patched at one end.

Errors in the charge of the court as given, the refusal of special charges asked, and the insufficiency of the evidence to sustain the verdict, were the grounds relied upon in the motion for new trial.

*Terhune & Yoakum,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE.   1.   The property alleged to have been stolen is described in the indictment thus: "One twenty dollar gold piece, of the value of twenty dollars, current money of the United States, and one five dollar bill in money of the value of five dollars, and one pocket knife of the value of fifty cents, of the corporeal personal property of J. W. McKnight." A motion in arrest of judgment, based upon the supposed insufficiency of the description of the alleged stolen property, was made and overruled.

We think the indictment is sufficient. "Money" is property (Code Crim. Proc., Art. 732); and "when it becomes necessary

to describe property of any kind in an indictment, a general description of the same by name, kind, quantity, number and ownership, if known, shall be sufficient." (Code Crim. Proc., Art. 427.) This last quoted Article is a new provision added by the revisers, and dispenses with the great particularity required prior thereto in the description of property, especially money. In this indictment the money is described by name, kind, quantity, value and ownership, and while this description would not perhaps be good under decisions made before the adoption of the above quoted provision, we think it is amply sufficient now.

2. Defendant excepted on the trial to the following paragraph of the court's charge to the jury, viz: "Possession of property recently stolen is evidence against the accused, which, like all other evidence, is to be taken and considered by the jury in connection with other testimony in the case." We think the exception to this charge well taken. It was not necessary for the court to charge upon this evidence separately and apart from the other evidence in the case. It was giving to it undue prominence, and especially was it improper to say to the jury that such evidence was *against* the defendant. The true rule is that " the possession of property recently stolen is merely a fact or circumstance to be considered by the jury, in connection with all the other evidence submitted to them, in determining the guilt of the possessor." (*McCoy* v. *The State*, 44 Texas, 618; *Watkins* v. *The State*, 2 Texas Ct. App., 73.) It is not always that the possession of recently stolen property is evidence *against* the possessor. It is always *admissible* evidence in a trial for theft, but it is for the *jury* and not the *judge* to determine whether it is *against* the defendant. And even when it is evidence *against* the defendant, it is of itself, unaided by other evidence, insufficient to support a conviction, and the court committed a further error in refusing to so charge when requested so to do. (*Dreyer* v. *The State*, 11 Texas Ct. App., 503; *McWhorter* v. *The State*, 11 Texas Ct. App., 584.) We think the paragraph of the charge above quoted was erroneous, and, being promptly excepted to, the error must reverse the judgment.

3. This conviction is based alone upon circumstantial evidence. The court charged in regard to this character of evidence as follows: " In order to convict on circumstantial evidence, the circumstances must be so connected as to exclude every reasonable hypothesis but the guilt of defendant." This portion

of the charge was excepted to at the trial, because it was not sufficiently full and specific to enable the jury to understand and apply the rules applicable to circumstantial evidence. We think the exception is well taken. We are of the opinion that, when tested by the decisions, the charge does not fill the demands of the law. (*Rye* v. *The State*, 8 Texas Ct. App., 153; *Henderson* v. *The State*, 14 Texas, 514; *Hunt* v. *The State*, 7 Texas Ct. App., 212; *Barr* v. *The State*, 10 Texas Ct. App., 507.)

As the evidence in this case was not only entirely circumstantial, but was also of a rather questionable character, the principal witness for the State being, at the time of the alleged theft, in an intoxicated condition, it was very essential that the charge of the court upon circumstantial evidence should fill the full measure of the law.

4. There are other questions presented by the record, and other errors, perhaps, which would demand a reversal of the judgment, but they are such as are not likely to again occur upon another trial of the case, and we will not therefore consume time in discussing and determining them.

For the errors in the charge of the court named above, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered May 7, 1884.