In the Matter of the GUARDIANSHIP OF the ESTATE of Elizabeth M. NEAL, a person of unsound mind, Appellant.

No. 14933.

Court of Civil Appeals of Texas.

Houston.

Sept. 22, 1966.

Rehearing Denied Sept. 27, 1966.

M. W. Parse, Jr., Paul E. Martin, Thomas J. Brorby, Houston, attorneys; Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, of counsel, for appellant.

WERLEIN, Justice.

Appellant, Bank of the Southwest National Association, Houston, in its capacity as Guardian of the Estate of Elizabeth M. Neal, a Person of Unsound Mind, hereinafter referred to as the Ward, made application to the Probate Court of Harris County, Texas, on April 20, 1966 for authorization to make a gift of $1,500,000.00 from the estate of the Ward to the residuary legatees under her will in order to minimize estate taxes that would become due upon her death. There was no opposition to the application of appellant at any stage of the proceedings. The application of appellant was denied by the Probate Court and on appeal to the District Court judgment was entered denying the same. This case is one of novel impression in Texas.

Pursuant to the request of appellant, the trial court made the following findings of fact and conclusions of law, which clearly set out the facts and the reasons which prompted the filing of appellant's application and the conclusion of the trial court.

## FINDINGS OF FACT

"1. The Ward is a ninety-six year old widow who has been adjudicated a person of unsound mind. The Ward is presently of unsound mind and body and in all probability will never regain sufficient mental or physical capacity to manage her property and financial affairs, and in all probability will never again be able to understand the nature and effect of making a disposition of her property, including the making of a new will or codicil.

"2. The present value of the estate of the Ward subject to the guardianship is approximately $2,400,000 with an annual income of more than $90,000. Additionally, the Ward has an interest in two trusts, both managed by the Guardian as trustee, one created by the Ward's husband and the other created by the Ward herself. Properties in the first trust are valued at approximately $5,467,000 with an annual average taxable income for the past several years of $146,000. The second trust includes properties valued in excess of $1,395,000. The annual average taxable income from the properties in this trust is approximately $38,000. Accordingly, properties valued in excess of $9,260,000 with a yearly income of approximately $274,000 are available for the Ward's care and maintenance.

"3. Expenses for the Ward's care and maintenance for the year beginning May 4, 1965 and ending May 4, 1966 totalled $62,000.

"4. Should the gift proposed by the Guardian be made, the needs of the Ward would still be adequately provided for and the Ward would continue to enjoy the standard of living to which she is accustomed.

"5. The Ward's heirs at law are her three grandchildren, James Robert Neal, Nina Neal Cullinan and Marion Neal Ru-

bey. All of such heirs are in favor of the making of the gift proposed by the Guardian.

"6. Under the Ward's Will and Codicils thereto, the residue of her estate is left to James Robert Neal, Nina Neal Cullinan and in trust for the children of Marion Neal Rubey.

"7. The gift proposed by the Guardian would be made in trust for the benefit of James Robert Neal, Nina Neal Cullinan and the children of Marion Neal Rubey in the same manner as the Ward provided for the disposition of the residue of her estate in such Will and Codicils. The proposed trust agreement provides that no distribution of principal could be made from the trust until five years after the death of the Ward or until all litigation with respect to her estate has been concluded, whichever is later.

"8. During a period of almost thirty years prior to her disability due to advanced age, the Ward made outright gifts totaling $912,174.15 to James Robert Neal, totaling $762,458.84 to Nina Neal Cullinan and totaling $852,397.38 to Marion Neal Rubey or her children. The Ward was cognizant and appreciative of the tax advantages of decreasing the size of her estate, and made gifts to her grandchildren not only for the purpose of enabling them to have the present enjoyment of her estate, but also to reduce her estate so that upon her death, estate taxes would in turn be minimized.

"9. In 1956 the Ward gave to her three grandchildren equal undivided interests in one-half of a certain tract of land situated in the Memorial section of the City of Houston, Texas (the "Memorial property"). At the time this gift was made, the Ward informed her tax advisor, Jay Phillips and her grandchildren that she intended to make an inter-vivos gift of the remaining Memorial property to her grandchildren within the next few years. However, because of her disability due to advanced age, the Ward was unable to carry out this in-

tention. The remaining Memorial property constituted the principal asset in her guardianship estate at the time of the Guardian's appointment and has since been sold. The proceeds of sale exceed the amount of the proposed gift.

"10. On all of the evidence in this proceeding and on the preponderance of the evidence, the Court finds that the Ward, if of sound mind, would make the gift of $1,500,000 as requested by the Guardian in this proceeding. In further support of this finding, the Court makes the following special and detailed findings, that is, the Court finds as facts that if the Ward were competent:

"A. Jay Phillips, a senior tax accountant and advisor and partner of the accounting firm of Haskins & Sells, who has been the Ward's principal estate planning advisor for many years, would have made known to her the facts disclosed by the record in this proceeding.

"B. Jay Phillips and each of the Ward's grandchildren would recommend to the Ward that she make the proposed gift for her own benefit and for the benefit of the natural objects of her bounty.

"C. The Ward would know and would consider (among other things) the facts that:

"(1) She is nintey-six years of age, is seriously ill, and that her life might end suddenly at any time;

"(2) She could not in all probability need or intelligently spend any substantial part of her annual income or any part of the principal of her estate and that the making of the proposed gift would not endanger or jeopardize the provisions for her care and upkeep and would not endanger or jeopardize the carrying out of the bequests set forth in her Will and Codicils thereto;

"(3) Taking the action recommended to her would decrease the value of her

residuary estate at her death and materially benefit the objects of her bounty;

"(4) Her three grandchildren, the natural objects of her bounty over a period of many years and the testamentary residuary takers of her estate, had recommended that the proposed gift be made;

"(5) That the other legatees named in her Will and Codicils thereto would not be adversely affected by the recommended action.

"D. The Ward would believe what was said to her by the persons advising her and would accept their opinions and recommendations as sincere, wise and proper and would rely upon the soundness of the advice so given to her, and the Ward would make the proposed gift as recommended to her.

"11. The primary purpose of the proposed gift is to preserve the estate of the Ward- by reducing the amount of estate taxes due upon her death. Even though the Ward dies within three years after the gift is made and the amount of the gift is included in her gross estate for Federal estate tax purposes as a 'gift in contemplation of death,' a Federal estate tax savings of approximately $240,000 will result because the 'gross estate' of the Ward for Federal estate tax purposes will be reduced by the amount of the Federal gift tax paid, and the gift tax paid will be allowed as a credit against the estate tax. Should the Ward survive for at least three years after the date of the gift, the estate tax savings would be almost double that amount.

"12. Jay Phillips and Ken Studdard, tax accountants with the accounting firm of Haskins & Sells, who have had years of experience as estate planning advisors, both testified and the Court finds as a fact that considering all of the facts and circumstances, a prudent man owning and managing the Ward's estate would make the proposed gift.

"13. The Guardian in presenting this application to the Probate Court and to this Court has incurred attorneys' fees in the amount of $15,000.00, accountants' fees in the amount of $2,000.00, witness fees in the amount of $500.00, all of which fees and expenses are reasonable. Should the application of the Guardian be approved, a Guardian's fee of $3,000.00 in lieu of the statutory fee of 5% would be reasonable.

"CONCLUSIONS OF LAW

"1. If express statutory authority existed for a Guardian to make a gift of the Ward's property for the primary purpose of minimizing estate taxes, this Court would authorize that the proposed gift be made on the facts and evidence presented in this case.

"2. It is the Court's conclusion, however, that there is no such authority granted by statute. Since this is a case of first impression in this State, this Court should not determine that such authority exists by implication. Accordingly, the Guardian's application will be denied.

"3. In view of the holding that the Court should not approve the Guardian's application, the Court cannot authorize the Guardian to pay reasonable accountant's fees, attorneys' fees and other expenses incurred in this proceeding."

The question presented for determination by this Court is whether under the foregoing facts as set out in the trial court's findings of fact, the guardian has the power and authority to make the proposed gift from the Ward's estate, where the Ward would make such gift, if competent, as recommended by her advisors.

Appellant asserts that the trial court erred in denying its application because a guardian has the common law power under Section 32 of the Probate Code of Texas, V.A.T.S., to make a gift from the ward's estate where the ward, if competent, would do so, when the exercise of such power would not conflict with the provi-

sions of the statutes of this State. Section 32 of the Probate Code reads as follows: "The rights, powers and duties of executors, administrators, and guardians shall be governed by the principles of the common law, when the same do not conflict with the provisions of the statutes of this State."

 It will be noted that this section of the Probate Code by its silence denies be implication the exercise by the Probate Court of equitable powers. But even if the words, "principles of the common law," are construed to include equitable powers, this section of the code does not grant to the court common law powers, but merely provides that the rights, powers and duties of executors, administrators, and guardians shall be governed by the principles of the common law, when the same do not conflict with the provisions of the statutes of this State.

 Under the common law, if construed to include equitable powers, a guardian has the power and authority to make a gift from the ward's estate where the evidence shows that the ward, if sane, would make the gift. In Ex parte Whitbread, 2 Mer. 99, 35 Eng.Rep. 878 (Ch. 1816), the lord chancellor authorized certain payments out of the ward's estate for the benefit of his brothers and sisters who were found to be in need. The court said: " * * * and if we get to the principle we find it is not because the parties are next of kin of the Lunatic, or, as such, have any right to an allowance, but because the Court will not refuse to do, for the benefit of the Lunatic, that which it is probable the Lunatic himself would have done." Appellant has cited certain later English cases following the doctrine announced in the Whitbread decision, and asserts that such doctrine has also been followed in a number of American jurisdictions, including New York, Delaware, North Carolina, Iowa, Missouri, Kansas, Michigan, New Jersey, Pennsylvania and Washington, but has been rejected in other jurisdictions, namely: Rhode Island, Tennessee and Maryland. See Annotations in 34 L.R.A. 297, 59 A.L.R. 653, and 160 A.L.R. 1435.

Appellant cites City Bank Farmers Trust Company v. McGowan (1945), 323 U.S. 594, 65 S.Ct. 496, 89 L.Ed. 483, an internal revenue case. In that case the ward was over seventy years of age and had an average annual income of $300,000.00 with expenses not exceeding $50,000.00 per year. Prior to the death of the ward, the Supreme Court of New York had authorized the guardian to make gifts to the ward's daughter and grandsons out of her income in the total amount of almost $1,400,000.00, although neither the daughter nor the grandchildren of the ward were in need of the funds for support and maintenance. The Supreme Court of the United States said: "We hold, therefore, that where, as in New York, the court is to substitute itself as nearly as may be for the incompetent, and to act upon the same motives and considerations as would have moved her, the transfer is, in legal effect, her act and the motive is hers."

In Frank J. Trau v. Frank Scofield, 47–2 U.S. Tax Cas., par. 10579 (W.D.Tex. 1947), the Federal District Court approved the authorization of gifts from a guardianship by a Texas Probate Court. The court concluded as follows:

"The motives for these payments were the sons' need of the funds and the guardian's view that Mrs. Percy (the ward) would have made such gifts if sane. None of such payments was made in contemplation of Mrs. Percy's death. Such payments were validly made under State Law."

It will be noted in such case that the sons were in need of funds, whereas in the instant case no need exists on the part of the proposed donees.

Appellant also cites several cases from other jurisdictions which have discussed the power and authority of guardians to make gifts for the primary purpose of minimizing taxes, including In re DuPont, Del.Ct. of Chancery 1963, 194 A.2d 309;

In re Carson, 1962, 39 Misc.2d 544, 241 N.Y.S.2d 288; and In re Trusteeship of Kenan, 1964, 262 N.C. 627, 138 S.E.2d 547. We are of the opinion that it would unduly lengthen this opinion and serve no useful purpose to discuss these cases, especially since it is our view that the present case must be decided in consonance with the statutes of this State. There is no specific authorization in the Probate Code for gifts such as those proposed by appellant. Section 230 (b) of the Probate Code provides: "The guardian of the estate of a ward is entitled to the possession and management of all properties belonging to the ward, to collect all debts, rentals, or claims due such ward, to enforce all obligations in his favor, and to bring and defend suits by or against him; but, in the management of the estate, the guardian shall be governed by the provisions of this Code. It is the duty of the guardian of the estate to take care of and manage such estate as a prudent man would manage his own property. He shall account for all rents, profits, and revenues that the estate would have produced by such prudent management."

Appellant forcefully argues that under said Section 230 (b) the guardian must manage the ward's estate as a prudent man would manage his own property and that the trial court, therefore, erred in denying its application since the court found that a prudent man would make the proposed gift. This section of the Probate Code must be construed in conjunction with other statutory provisions which set out more specifically what a guardian may do and by implication what a guardian may not do in the management of the ward's estate. We are of the opinion that in construing the general provision in Section 230 (b) with respect to the management of the ward's estate the following pertinent sections of the Probate Code should be considered:

"Section 398. Contributions

"(a) Application. The guardian may at any time file his sworn application in writing with the county clerk, requesting the court in which the guardianship is pending to enter an order authorizing the guardian to contribute from the income of the ward's estate a specific amount of money, stated in said application, to one or more designated corporations, trusts, or community chests, funds, or foundations, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to some one or more designated non-profit federal, state, county, or municipal projects operated exclusively for public health or welfare."

"(c) Action of the Court. Upon the conclusion of such hearing, if the court is satisfied and finds from the evidence that the amount of the proposed contribution stated in the application will probably not exceed twenty per cent of the net income of the ward's estate for the current calendar year, and that the net income of the ward's estate for such year exceeds, or probably will exceed, Twenty-five Thousand Dollars, and that the full amount of such contribution, if made, will probably be deductible from the ward's gross income, in determining the net income of the ward under the applicable income tax laws, rules, and regulations of the United States of America, and that the condition of the ward's estate is such as to justify a contribution in said amount, and that the proposed contribution is reasonable in amount and is for a worthy cause, the court in its discretion may enter an order authorizing the guardian to make such contribution from income of the ward's estate to the particular donee designated in said application and order. When such order has been entered and filed with the county clerk, the guardian shall be entitled to make such contribution, but he shall not be entitled to any commission or compensation by reason thereof or in connection therewith"; and,

"Section 421. Support of Ward's Family

"The court by which any incompetent is committed to guardianship may make orders

for the support of his family and the education of his children, when necessary."

In Seley v. Howell, Tex.Com.App. 1926, 115 Tex. 583, 285 S.W. 815, the court construed the word "family" as used in Article 4275 of Vernon's Annotated Civil Statutes, now Section 421 of the Probate Code, to include the ward's destitute mother, although the ward was under no legal obligation to support her. It should be noted, however, that the authority included in Section 421 is limited by the words "when necessary." The court said:

"Indeed, the only authority which the guardian of such person has or which the probate court itself, as to that, has, if it exists, must be found in the statute quoted. The court is given authority to make orders for the support of the 'family' of the person of unsound mind and the education of his children when necessary, but the statute nowhere defines the word 'family' in this connection. * * *."

■ It seems clear that Seley v. Howell does not adopt the doctrine of substitution of judgment through the broad general provision of Section 230 (b) of the Code with respect to management of the Ward's estate as urged by appellant. The express provision with respect to the court making orders for the support of the Ward's family and the education of his children, *when necessary*, negates any legislative intent to permit the making of such orders when not necessary for the support of the family (Emphasis supplied.) The applicable rule of law here is so ancient that it has come down to us in the form of a Latin Maxim: Expressio unius est exclusio alterius.

Section 398 (a) has no direct bearing on the case at bar as it relates to contributions from the income of the Ward's estate to certain organizations operated exclusively for religious, charitable or educational purposes or certain projects operated exclusively for public health or welfare. But it will be noted that such contributions are strictly limited by the provisions of Section 398 (c). The court must be satisfied that the amount of the contributions will probably not exceed twenty per cent of the net income of the Ward's estate for the current year, and that the net income of the Ward's estate for such year exceeds or probably will exceed $25,000.00, and that the full amount of such contribution will probably be deductible from the Ward's gross income in determining the net income of the Ward under applicable income tax laws, etc., all as provided in said Section of the Code.

■ The enactment of Section 398 of the Probate Code would not have been necessary if the Probate Court could have exercised the power granted therein without such enactment. Moreover, such section sets out in detail the conditions under which the charitable gift may be made, and would seem to negative the doctrine of substitution of judgment. It is our view that this section of the Probate Code strongly indicates the legislative intent to confer upon the court a power and authority, which it was believed the court did not have prior to such enactment, namely, to make gifts out of the income from the Ward's estate.

We have found nothing in the Probate Code or the Statutes of this State expressly or impliedly conferring upon the court the power and authority to make a gift such as that proposed by appellant. The Texas cases relied upon by appellant involving the application of the "prudent man" provision in Section 230 (b) of the Code, are all distinguishable. They do not stand for the proposition that the court may authorize the giving away or depleting the Ward's estate, but rather that the court may in a proper case enter an order which would result in protecting or preserving the estate. For example, in Stillwell v. Standard Savings & Loan Ass'n, Tex.Civ.App., 30 S.W. 2d 690, err. dism'd, relied upon by appellants, the court authorized the guardian to borrow money and fix a lien on the interest of the minor as well as that of the guardian in the

property in question in order to preserve the property of the minor and make it tenable.

We have concluded that any order authorizing the gift proposed by appellant in this case would be in excess of the power delegated by the Statutes of this State and would be invalid. We therefore affirm the judgment of the trial court in so far as it denies the application to make the gift in question. See Commander v. Bryan, Tex. Civ.App. 1938, 123 S.W.2d 1008 n. w. h.; Glasgow v. McKinnon, 1890, 79 Tex. 116, 14 S.W. 1050.

We sustain appellant's assignment that the trial court erred in holding that it could not allow the reasonable expenses incurred in connection with this proceeding unless it approved the guardian's application. Section 242 of the Texas Probate Code provides that personal representatives of estates shall be entitled to all necessary and reasonable expenses incurred in the management of the estate and all reasonable attorney's fees necessarily incurred. The court found that the guardian has incurred attorney's fees in the amount of $15,000.00, accountant's fees in the amount of $2,000.00 and witness fees in the amount of $500.00, and that all of such fees and expenses are reasonable. The court further found that a prudent man owning and managing the ward's estate would make the proposed gift.

■ In view of the trial court's findings, the evidence, and the duty imposed upon appellant by Section 230 (b) of the Probate Code to manage the ward's estate as a prudent man would manage his own property, we are of the opinion that a bona fide effort by appellant to determine whether it should make the proposed gift and obtain a judicial decision as to such matter, was warranted, and that appellant in filing its application acted as a prudent person would have done.

In the early case of Caldwell v. Young & Morgan, 21 Tex. 800 (1858) our Supreme Court set forth the test to be applied in determining whether expenses of a guardian incurred in a law suit should be allowed. The Court said: " * * *. The true test is, would a prudent man, under all the circumstances, as they existed at the time, judge it to be proper and necessary to bring and prosecute the suit to protect the interest of the minors, and would he judge it necessary and proper to make the employment of counsel to prosecute the suit. If so, then such employment would be a necessary and reasonable expense, which should be allowed to the guardian."

This test has been approved and applied in Gibson v. Gray, 1897, 17 Tex.Civ.App. 646, 43 S.W. 922; Huff v. Huff, 132 Tex. 540, 124 S.W.2d 327 (1939); and American National Bank of Beaumont v. Biggs, Tex. Civ.App., 274 S.W.2d 209, writ ref., n. r. e. In Huff v. Huff, the Court said:

"The alleged will offered for probate named J. H. Huff independent executor of the estate of Mrs. Huff. This gave him the right to offer the will for probate; and if it appeared that he, as such executor, was acting in good faith to probate such will, and employed an attorney, or attorneys, for that purpose, the estate is properly chargeable with a reasonable fee for such services. See 14 Tex.Jur., sec. 652, p. 476; see also Note, 69 A.L.R. 1052. The fact that the attorney was unsuccessful in the suit, and that the probate of the will was denied, would not prevent an allowance for a reasonable fee. * * *"

Judgment of the trial court insofar as it denies recovery by appellant of the fees hereinabove set out is reversed and rendered, otherwise affirmed.

Affirmed in part and in part reversed and rendered.