ESTATE OF ANNA LORA GILCHRIST, DECEASED, LAYLAND MYATT AND ELIZABETH DEARBORN, INDEPENDENT EXECUTORS, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 735–76.    Filed October 11, 1977.

*Ben A. Douglas*, for the petitioner.
*David L. Jordan*, for the respondent.

STERRETT, *Judge:* Respondent determined a deficiency in the estate tax of the Estate of Anna Lora Gilchrist in the amount of $231,051.83.[1] Due to concessions by the parties[2] the remaining

---

[1]Respondent would allow additional credit for State death tax based upon the increase in value of the estate if payment is substantiated.

[2]The parties agree that the fair market value of rental property and vacant land at the date of decedent's death described, as reported on Schedule E of the estate tax return, as properties included in an offer to purchase by J.C. Llewellyn, was $274,206.45. Respondent concedes that his disallowance

issue for decision is whether the decedent held, at the time of her death, a general power of appointment, under her husband's last will and testament, over jointly held property thereby causing it to be included in her gross estate under section 2041, I.R.C. 1954.[3]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Anna Lora Gilchrist (decedent) died testate on March 22, 1973, while a resident of Fort Worth, Tex. Layland Myatt and Elizabeth Fewell Dearborn were named independent coexecutor and coexecutrix, respectively, in decedent's will, and they duly qualified as such in Cause No. A–15516, Probate Court of Tarrant County, Tex. At the time of filing the petition herein, Layland Myatt was a resident of Fort Worth, Tex., and Elizabeth Fewell Dearborn was a resident of Alexander, Ark. The Federal estate tax return was filed with the Director, Internal Revenue Service Center, Austin, Tex., on February 27, 1974.

Decedent's husband, Charlie Frank Gilchrist (hereinafter sometimes referred to as husband), died on June 25, 1960. In his last will and testament dated February 23, 1952, after making specific bequests totaling $40,000, he provided as follows:

I give devise and bequeath to my beloved wife, Anna Lora Gilchrist, the income the use and benefits with full rights to sell or transferall the remainder of my property, both real and personal, so long as she may live, and at her death, any remainder of my estate not required for her use, shall be divided equally among the Estates of Jennie Gilchrist Haughawout deceased.Mrs Ida Grant Mrs Marcella Yates and Melvin Gilchrist deceased.

Fifth: I hereby nominate and appoint my Beloved Wife Anna Lora Gilchrist, Independent Executrix of this my last will and Testament and direct that no Bond be required of her as such.and that the Probate Court have no control over

---

of $5,507 as a debt of the estate was in error and that petitioner shall be entitled to deduct accounts payable in the amount of $8,321 as a debt of the estate. Petitioner concedes that it is not entitled to a deduction for charitable bequests in the amount of $51,500 reported on Schedule N of the estate tax return. Also, the parties have stipulated that respondent's adjustment to the value of U.S. Treasury bonds from $40,300 to $99,580, on Schedule F of the return, was consequent to other adjustments proposed in the statutory notice of deficiency and further adjustment may be required as a result of this Court's decision. Such adjustments shall be made without the necessity of adducing evidence on this issue except for the filing of an amended application for redemption of treasury bonds for Federal estate tax credit (Form PO 1782). Finally, the parties agree that petitioner is entitled to deductions for attorneys' fees and other expenses incident to this action upon proper substantiation thereof.

[3] All statutory references are to the Internal Revenue Code of 1954, as in effect during the years at issue.

my estate other than to admit this will to Probate and approve inventory and appraisment. [Reproduced literally.]

Decedent served as independent executrix of her husband's estate from the time of her qualification until October 20, 1971, at which time the Probate Court of Tarrant County, Tex., entered its order in Cause No. A–12616 adjudicating decedent to be a person of unsound mind and appointing guardians of her person and estate.[4] Shortly thereafter an order was entered in the husband's estate, Cause No. 30334, Probate Court of Tarrant County, Tex., removing decedent as independent executrix and appointing Ada Louise Crockett (Crockett), administratrix. Crockett was not a beneficiary under the will of Charlie Gilchrist. Decedent remained a ward of the court until her death.

At the time of her husband's death decedent was 72 years of age, childless, and had no dependents. Her undivided one-half interest in the community was valued in excess of $500,000 and, additionally, she owned separate property.[5]

On Schedule E of the Federal estate tax return petitioner reported only one-half of the jointly owned property held by decedent and the Estate of Charlie Gilchrist. Respondent in his notice of deficiency, dated November 14, 1975, determined that the decedent received a section 2041 general power of appointment under her husband's will and accordingly included the entire value of the jointly held property, instead of a one-half interest, in decedent's taxable estate.

## OPINION

The sole issue for our decision is whether Mrs. Gilchrist at the date of her death had a general power of appointment within the meaning of section 2041(a)(2)[6] under the terms of her husband's

---

[4]Elizabeth Fewell Dearborn was appointed guardian of decedent's person and Layland Myatt guardian of the estate of decedent.

[5]See n. 2 *supra*, wherein the parties have agreed that the fair market value, at date of decedent's death, of 86 parcels of rental real estate or vacant land, in which decendent had an undivided one-half interest (the other undivided one-half being subject to the provisions of her husband's will), was $274,206.45.

[6](a) IN GENERAL.—The value of the gross estate shall include the value of all property—

(2) POWERS CREATED AFTER OCTOBER 21, 1942.—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive. A disclaimer or renunciation of such a power of appointment shall not be deemed a release of such power. For purposes of this paragraph (2), the power of appointment

will. Petitioner, on brief, has launched a five-prong attack on respondent's determination, to wit: (1) The power was not general as it was limited by an ascertainable standard under section 2041(b)(1)(A);[7] (2) under section 2041 (b)(1)(C)(ii)[8] the power was exercisable by decedent only in conjunction with a person having a substantial interest in the property, subject to the power, which was adverse to the exercise of the power in favor of the decedent; (3) that the decedent effectively disclaimed the power prior to the date of her death; (4) that Mrs. Gilchrist was judicially estopped to claim more than a life income interest in the property subject to the power; and (5) the decedent did not possess a general power at the date of her death because she previously had been declared a person of unsound mind and therefore had no legal capacity to exercise any power under her husband's will. Respondent does not agree with any of petitioner's alternative arguments and will seperately scrutinize petitioner's five contentions hereinafter.

1. *The power limited by an ascertainable standard.*—Petitioner argues that, although "at first blush" the disposition provision[9] of Charlie Gilchrist's will appears to have created in his wife a general power of appointment, the use of the phrase

---

shall be considered to exist on the date of the decedent's death even though the exercise of the power is subject to a precedent giving of notice or even though the exercise of the power takes effect only on the expiration of a stated period after its exercise, whether or not on or before the date of the decedent's death notice has been given or the power has been exercised.

[7](b) DEFINITIONS.—For purposes of subsection (a)—

(1) GENERAL POWER OF APPOINTMENT.— The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment.

[8](C) In the case of a power of appointment created after October 21, 1942, which is exercisable by the decedent only in conjunction with another person—

\*        \*        \*        \*        \*        \*        \*

(ii) If the power is not exercisable by the decedent except in conjunction with a person having a substantial interest in the property, subject to the power, which is adverse to exercise of the power in favor of the decedent—such power shall not be deemed a general power of appointment. For the purposes of this clause a person who, after the death of the decedent, may be possessed of a power of appointment (with respect to the property subject to the decedent's power) which he may exercise in his own favor shall be deemed as having an interest in the property and such interest shall be deemed adverse to such exercise of the decedent's power.

[9]"I give devise and bequeath to my beloved wife, Anna Lora Gilchrist, the income the use and benefits with full rights to sell or transferall the remainder of my property, both real and personal, so long as she may live, and at her death, any remainder of my estate not required for her use, shall be divided equally among the Estates of Jennie Gilchrist Haughawout deceased.Mrs Ida Grant Mrs Marcella Yates and Melvin Gilchrist deceased." (Reproduced literally.)

"any remainder of my estate not required for her use" should not be presumed to have been idly inserted by Mr. Gilchrist; rather its employment and placement obviously imposed some limitation upon the grant of authority preceding it. Petitioner contends that both the terms "require" and "use" have been held to impose limitations upon bequests equatable with support and maintenance and their joint employment in the will strongly suggests Mr. Gilchrist's intention to limit the scope of the power. "Require" has been interpreted to mean "need" and that need equates with maintenance according to one's station in life. Furthermore petitioner contends that the surrounding circumstances buttress this conclusion. At the time of her husband's death Mrs. Gilchrist was 72 years of age and, at date of execution of his will and at his death, she was without descendants or dependents and was financially secure. Mr. Gilchrist expected his relatives to be the ultimate beneficiaries of his estate and the use of the phrase "not required for her use" mandates the conclusion that the power conferred upon his wife was limited in scope to her needs of support and maintenance.

Respondent contends that Mr. Gilchrist's will authorizes his wife to use corpus without expressing or designating any use or purpose. The literal reading of the phrase "not required for her use" does not state any ascertainable standard and her husband gave her the "full rights to sell or transfer all the remainder of his property." The dispositive clause clearly leaves to her discretion the kind and extent of the use which she required or desired. Additionally, the surrounding circumstances, as well as the terms of the will itself, clearly indicated Mr. Gilchrist's intentions. He and his wife had no children or dependents, he prepared his own will, and prior to his wife's bequest he provided cash bequests for all of his heirs. It was Mr. Gilchrist's intent that his wife receive the remainder of his estate to do with as she saw fit, the remainder, if any, to go to the heirs to whom, previously, he had provided specific bequests. By not specifically providing for any ascertainable standard limiting his wife's power to consume the property, her general power is includable in her estate at the time of her death. *Lehman v. United States*, 448 F.2d 1318 (5th Cir. 1971).

We begin with the premise that whatever property interests were created under Mr. Gilchrist's will must be determined under applicable State law, in the instant case the Texas law of

wills. *Helvering v. Stuart*, 317 U.S. 154 (1942); *Morgan v. Commissioner*, 309 U.S. 78 (1940). However, the taxability of decedent's interest is to be determined by Federal tax law. *Jenkins v. United States*, 428 F.2d 538 (5th Cir. 1970), cert. denied 400 U.S. 829 (1970); *Grossman v. Campbell*, 368 F.2d 206 (5th Cir. 1966); *Phinney v. Kay*, 275 F.2d 776 (5th Cir. 1960). "If the practical exercise of her [Mrs. Gilchrist's] powers of disposition and control for her own benefit was not confined within limitations at least as stringent as those prescribed by Federal law, she enjoyed a general power of appointment for Federal estate tax purposes regardless of the label attached to her interest by State courts." *Lehman v. United States, supra* at 1319.

Under Texas law the paramount concern in construing a will is the intention of the testator. *Estate of Cox v. Commissioner*, 59 T.C. 825 (1973); 61 Tex. Jur.2d sec. 144. Absent an ambiguity such intention must be arrived at from the will's four corners. *Atkinson v. Kettler*, 372 S.W.2d 704 (Tex. Civ. App. 1963). However, if the will is susceptible of different constructions, extrinsic evidence is admissible to ascertain the meaning sought to be expressed by the testator. *Huffman v. Huffman*, 161 Tex. 267, 339 S.W.2d 885 (1960). Although a will should be construed to give effect to every part of it and it will not be presumed the testator intended to do any useless thing (*Republic National Bank of Dallas v. Fredericks*, 155 Tex. 79, 283 S.W.2d 39 (1955)), a layman who draws his own will cannot be deemed to have used words in the same sense as if they were used by an attorney.[10] *Bergin v. Bergin*, 159 Tex. 83, 315 S.W.2d 943 (1958).

With the foregoing principles in mind our inquiry, "then, is whether the testamentary language [of Mr. Gilchrist's will], given a Texas-style construction,[11] acually confined * * * [Mrs. Gilchrist's] authority to the 'ascertainable standard' demanded by section 2041." *Lehman v. United States, supra* at 1320. Mr. Gilchrist gave his wife "the income the use and benefits with full rights to sell or transfer all the remainder of my property, both

---

[10]Upon reading Mr. Gilchrist's one-page will it is readily apparent that it was not drafted by an attorney but by a layman, presumably, Mr. Gilchrist.

[11]We note that petitioner, on brief, aware of this proposition has argued its case under the case law of Connecticut, Indiana, Wisconsin, Ohio, and Massachusetts and we are perplexed by this action. While resort to such other local law may be relevant if Texas law is silent in the area, we have found ample Texas case law to resolve this issue and therefore find petitioner's citation of authorities inapposite.

real and personal, so long as she may live." Thus she had the power to sell all the property and/or transfer it, i.e., to give it away. *Singer v. Singer*, 150 Tex. 115, 237 S.W.2d 600, 605 (1951); *Lehman v. United States*, an unreported case (S.D. Tex. 1971, 27 AFTR 2d 71–1662, 1667, 71–1 USTC par. 12,744, p.86,826–86,827). Decedent had the unqualified right of disposition of all her husband's property and the rights of the remaindermen were limited to whatever estate remained at her death. It therefore appears under Texas law that she received a "defeasible fee simple absolute." *Harrell v. Hickman*, 147 Tex. 396, 215 S.W.2d 876 (1948), 61 Tex. Jur.2d sec. 243.

However, if one assumes that Mrs. Gilchrist was merely a life tenant, rather than the holder of a defeasible fee simple absolute, with the restricted right to sell the property and no right to defeat the remaindermen's interests by gifting it away (*Nye v. Bradford*, 44 Tex. 618, 193 S.W.2d 165 (1946)), and while the sales proceeds to the extent not consumed by decedent would pass under the will to the remaindermen (*Edds v. Mitchell*, 143 Tex. 307, 184 S.W.2d 823 (1945)), "these restrictions relate to the power to convey, not to the power to consume." *Lehman v. United States*, 448 F.2d at 1320. In the instant case, the power of consumption is the critical element that must be scrutinized under the operation of section 2041.

It is apparent from a reading of the will that the object of Mr. Gilchrist's bounty was his wife. He bequeathed to her the "income the use and benefits" of the major portion of his estate. Moreover, he appointed his wife executrix of the estate directing that no bond be required of her and that the probate court have no control over the estate other than to probate the will and approve inventory and appraisement. In short, Mrs. Gilchrist was given the unfettered discretion to consume estate property and it is clear that Texas courts would not limit such consumption solely to her support and maintenance. The Texas construction of this will and in particular the phrase "not required for her use" yields the result that the phraseology is not a limitation upon the rights of the wife but, to the contrary, a limitation on the rights of the remaindermen to take in the event Mrs. Gilchrist had not disposed of the remainder of the estate prior to her death.[12]

---

[12]Where a will contains a provision that on a certain contingency an estate given to one person shall pass to another, the will is construed under Texas law to grant the first taker the greatest possible estate. 61 Tex. Jur.2d sec. 134.

*Feegles v. Slaughter,* 182 S.W. 10 (Tex. Civ. App. 1916); *Harrell v. Hickman, supra; Phinney v. Kay, supra.*

Moreover, in a similar Texas will construction case the Fifth Circuit in *Lehman v. United States, supra* at 1320, held that a decedent's power to consume corpus of her husband's estate whenever she found the income insufficient for her support, maintenance, comfort, and welfare "exceeded the strict limitations requisite for its immunization against Federal estate tax." We believe the power of "use and benefit" granted Mrs. Gilchrist is broader than that enumerated under the Lehman will. Mr. Gilchrist did not intend to nor did he express restrictions on his wife's power of consumption over the remainder of his estate and she possessed "an unrestricted and discretionary right * * * to consume the property, governed only by her own personal assessment of her own personal needs." *Lehman v. United States, supra* at 1321.[13]

2. *The power could be exercised only in conjunction with a person having a substantially adverse interest.*—Petitioner argues that, when Mrs. Gilchrist was removed as executrix of her husband's estate and upon qualification of Crockett as administratrix with will annexed, the exercise of any authority under Mr. Gilchrist's will required Crockett's concurrence to be legally effective. Crockett's interest as representative of Mr. Gilchrist's remaindermen was adverse to the decedent, particularly as to any attempted appropriation or consumption of corpus. Therefore under section 2041(b)(l)(C)(ii), the power conferred upon decedent was not a general power of appointment.

We have previously found that Crockett was not a beneficiary under the will of Charlie Gilchrist. In construing the phrase " 'substantial interest in the property, subject to the power, which is adverse to exercise of the power in favor of the decedent' as used in section 2041(b)(1)(C)(ii)" we have previously stated, and it is well settled, that such phrase "was intended at the very least to require that the third person have a present or future chance

[13]Further support for our holding is found in *Peoples Trust Co. of Bergen County v. United States,* 412 F.2d 1156 (3d Cir. 1969), wherein taxpayer similarly argued that the term "required" means "needs" and that the power to consume is limited by a duty imposed under New Jersey case law to consume only such principal as is reasonably necessary for comfortable maintenance and support. The Third Circuit found that New Jersey law did not consistently construe "require" to mean "needs," that the testator's wife was the object of his bounty, and that the wife's power to consume was not restricted within the limits of the statutory ascertainable exception. See also *Phinney v. Kay,* 275 F.2d 776 (5th Cir. 1960).

to obtain a personal benefit from the property itself." *Estate of Towle v. Commissioner*, 54 T.C. 368, 372 (1970). Therefore in the instant case, Crockett's interest as a nonbeneficiary trustee was neither substantial nor adverse within the meaning of section 2041.

3. and 4. *Disclaimer and judicial estoppel.*—Petitioner contends, under this part of its argument, that Mrs. Gilchrist, as executrix of her husband's estate, prepared and submitted under oath an affidavit for inheritance tax appraisement to the comptroller of public accounts and recorded a duplicate copy with the probate court. This affidavit was acknowledged in the same manner required by Texas law for the execution and recordation of deeds, and therein Mrs. Gilchrist characterized and delimited her interest under her husband's will to a life income interest. Therefore, as Mrs. Gilchrist had not previously accepted the benefits under her husband's will, she effectively disclaimed under Texas law part of the interest bequeathed to her.

Futhermore, petitioner alleges that this "sworn document" filed permanently of record with the probate court, fully and effectively estopped the decedent from ever expanding upon that interest as so delimited and characterized. She was bound by the construction she placed upon herself and the remainder legatees, under Mr. Gilchrist's will, could rely successfully upon such delimitation to prevent Mrs. Gilchrist from exacting anything from the properties beyond income.

Respondent asserts that decedent did not effectively disclaim anything under Texas law as the affidavit for inheritance tax appraisement did not clearly show her intent to disclaim her interest or any part thereof. Tex. Civ. Stat. Ann. art. 7425c (Vernon 1960). Also, respondent submits that judicial estoppel is not applicable in the instant case; Mrs. Gilchrist alleged delineation is not binding for Federal estate tax purposes.

Under Texas law "a beneficiary of a trust [or estate] who has not, by words or conduct, manifested his [or her] acceptance of the beneficial interest, may disclaim such interest," in a clear, unequivocal, and timely manner. *Aberg v. First National Bank in Dallas*, 450 S.W.2d 403, 407 (Tex. Civ. App. 1970). Moreover, Vernon's Tex. Ann. Civ. Stat. art. 7425c sec. 3, provides as follows:

Sec. 3. A release of a power, whether partial or complete, shall be valid and

effective, with or without a consideration, when the donee thereof executes and acknowledges, in the manner required by law for execution and recordation of deeds, an instrument evidencing an intent to make the release, and delivers the instrument or causes it to be delivered, either:

(A) To any person or in any manner specified for such purpose in the instrument creating the power; or

(B) To any adult person, other than the donee so releasing, who may take any of the property which is subject to the power in the event of its nonexercise or to one in whose favor it may be exercised after such partial release; or

(C) To any trustee or any co-trustee of the property which is subject to the power; or

(D) By filing the same with the County Clerk for recordation in the Deed Records of any county in the State of Texas in which any property subject to such power is situated, or in which the donee, if in control of the property resides, or in which the trustee in control of the property resides, or in which a corporate trustee in control of the property has its principal office, or in which the instrument creating the power is probated or recorded.

We note that, although section 11 of article 7425c provides that the means for disclaimer as provided therein are not exclusive, section 13 of the same article provides that this article "shall, so far as possible, be deemed to be declaratory of the common law of the State of Texas."

After careful consideration of the affidavit for inheritance tax appraisement filed by Mrs. Gilchrist, as executrix of her husband's estate, wherein on Schedule E she is listed as a beneficiary entitled to receive a life income interest with an "actual market value" of $100,203.83, we find such designation totally insufficient to denote any intent to renounce or disclaim the other benefits conferred thereupon. As previously stated, such renunciation must evince the beneficiary's intent to disclaim in a clear and unequivocal manner; the designation of decedent as a life income beneficiary and the reporting of Texas inheritance tax on this basis simply does not meet this test.

In light of our above holding, petitioner's judicial estoppel argument is without merit. "Judicial estoppel, like all estoppel, is equitable in nature, and is designed to protect those who are misled by a change in position." *Colonial Refrigerated Transportation, Inc. v. Mitchell*, 403 F.2d 541,550 (5th Cir. 1968). Petitioner's contention that in any legal action between Mrs. Gilchrist and the remainder legatees, the remaindermen could rely upon Mrs. Gilchrist's delimitation to prevent her from exacting anything from the properties beyond income is frivolous, at best. Standing alone, Mrs. Gilchrist's designation under the aforenot-

ed Texas inheritance affidavit is insufficient under Texas law to evoke the doctrine of judicial estoppel. See, for example, *Long v. Knox*, 155 Tex. 581, 291 S.W.2d 292 (1956).

5. *Decedent's legal incompetency.*—Finally, we come to petitioner's argument of legal incapacity. Decedent was declared a person of unsound mind on October 20, 1971, and remained under this disability, continuously, until her death in March of 1973. Petitioner contends that whatever power vested in her prior to the declaration of incompetency was transferred to Crockett upon her appointment as administratrix of Mr. Gilchrist's estate. Citing *Finley v. United States*, 404 F.Supp. 200 (S.D. Fla. 1975), on appeal to the Fifth Circuit, petitioner argues that decedent's legal disability precludes our finding that Mrs. Gilchrist possessed a general power of appointment within the meaning of section 2041(a)(2). Futhermore, although decedent was not legally incompetent at the date the power vested (in *Finley*, decedent lacked the legal capacity to exercise the power from the time of its devise until her death), our decision on this question should not turn on whether the recipient of the power was incompetent throughout the period of its existence but, rather, on her legal capacity at the time of death.

In *Finley v. United States, supra,* decedent Mildred B. Whitlock died testate 2 months after her husband, Lester J. Whitlock. Under her husband's will, a trust was created for Mrs. Whitlock wherein she received the income therefrom for life and a general testamentary power of appointment over the corpus of the trust existing at the time of her death. The District Court found that decedent at all times from the devise of this power until her death was mentally incompetent, lacked the requisite testamentary capacity to execute a will or codicil, and lacked the legal capacity to exercise the general testamentary power of appointment. "This [legal incapacity to exercise the power] prevented her from possessing a general power of appointment within the meaning of * * * section 2041(a)(2)." *Finley v. United States, supra* at 204.

Respondent contends, on brief, that an argument similar to petitioner's was rejected by the Ninth Circuit in *Fish v. United States*, 432 F.2d 1278 (9th Cir. 1970). In *Fish*, decedent's husband created a trust in favor of his wife, whereby during her lifetime she had the right in any calendar year to demand payment of all or part of the net income of the trust for that year. Any income

not so claimed by her would be added to the corpus of the trust and upon the wife's death the corpus, including accumulated income, was to be distributed to the grandchildren of the husband. The taxpayer conceded that the decedent possessed a general power over the trust income under 2041(b)(2).[14] However taxpayer contended that the decedent was incompetent for some 7 years prior to her death (she was competent when her husband died) and her general power of appointment could not have been lawfully exercised or released by her or anyone acting in her behalf. Therefore the annual expiration of her power was not a lapse and thus not a release within the meaning of section 2041(b)(2). The court held the matter of the decedent's competency to be immaterial although footnoting that decedent was never adjudicated an incompetent, and stated at page 1280:

that taxability and the inclusion of the assets in a decedent's gross estate are determined by the existence of the power and by circumstances which bring its release or exercise within the ambit of Sections 2041(a)(2) or 2041(b)(2). The precise manner of exercising or releasing the power is immaterial for purposes of determining taxability. Thus it is sufficient here that the power was released by its annual expiration or lapse, and it is immaterial whether the lapse occurred through a[n] [alleged] * * * failure to exercise the power or through the indifference or incompetency of the decedent. *Round v. Commissioner*, 332 F.2d 590 (1st Cir. 1964); *Townsend v. United States*, 232 F. Supp. 219 (E.D. Tex. 1964).

In *Round v. Commissioner, supra,* the First Circuit in affirming our decision (40 T.C. 970 (1963)) found that the decedent established three spendthrift trusts, retaining sufficient powers as cotrustee to accumulate or distribute income and to invade and distribute corpus, to make the trusts includable in his estate under sections 2036(a) and 2038(a)(2). Decedent was never declared mentally incompetent although a conservator was appointed on his behalf. This appointment, under Massachusetts law, did not remove the possibility that decedent could have recovered and resumed his position as cotrustee. Moreover, in citing its earlier decision in *Hurd v. Commissioner*, 160 F.2d 610 (1st Cir. 1947), affg. 6 T.C. 819 (1946), the court stated at page 594:

---

[14]The failure to exercise the power constituted a lapse of the power in each year that it was not exercised. Such lapse constituted a release of the power under sec. 2041(b)(2) in such a way that, if it were a transfer of property owned by the decedent, the property would have been included in the gross estate under sec. 2036(a)(1).

"The statute is not concerned with the *manner* in which the power is exercised, but rather with the existence of the power." So long as the power retained by the decedent *still existed in his behalf* the trust property was included in his estate. What is required, this court said is "some definitive act correlating the decedent's actual incompetence with his incapacity to serve as trustee." * * * [A] legal determination of insanity was the least that was necessary if the purpose of the statute was not to be defeated.[15]

Initially we note that, if this case had arisen in a jurisdiction where it is possible for the court to act on behalf of decedent and substitute itself, "as nearly as may be for the incompetent, and to act upon the same motives and considerations as would have moved her," the decedent through her representatives would have at the time of her death a general power and, in such circumstances, courts have upheld the imposition of estate tax. *City Bank Co. v McGowan*, 323 U.S. 594, 599 (1945); *Hurd v. Commissioner, supra* at 613. However, for the year at issue the law of Texas did not adopt the doctrine of substitution of judgment and we are unable to rest our decision on this ground. *In re Guardianship of Estate of Neal*, 406 S.W.2d 496 (Tex. Civ. App. 1966) affd. application for writ refused, no reversible error, 407 S.W.2d 770 (Tex. 1966),[16] see also 24 A.L.R.3d 851.

We agree with respondent that section 2041 is "not concerned with the manner in which the power is exercised," *Hurd v. Commissioner, supra* at 612, but rather the existence or possession of a general power at time of death. *Estate of Inman v. Commissioner*, 18 T.C. 522, 527 (1952), revd. on other grounds 203 F.2d 679 (2d Cir. 1953). Inquiry must be made as to whether decedent possossed a general power at date of death under local law. *Jenkins v. United States*, 428 F.2d 538 (5th Cir. 1970), cert. denied 400 U.S. 829 (1970).

Prior to and at date of death Mrs. Gilchrist was adjudicated legally incompetent. Therefore, she was legally deprived of whatever power she may have held. Guardians were appointed for her person and her estate. Accordingly, we must extend our analysis to ascertain the nature and extent of the power of the

---

[15]The District Court in *Townsend v. United States*, 232 F.Supp. 219 (E.D. Tex. 1964), relying on *Hurd v. Commissioner*, 160 F.2d 610 (1st Cir. 1947), stated that if decedent "possessed the power * * * at the time of her death and prior thereto, it is immaterial, under * * * section 2041(a)(2), * * * whether she was physically or mentally capable of exercising such power." Here, again, decedent had not been legally declared incompetent.

[16]Texas law now appears to be to the contrary. See Tex. Prob. Code Ann. sec. 230(b) (Vernon 1956), as amended by Acts 1975, 64th Leg. 268, ch. 114, sec. 1, effective Apr. 30, 1975.

guardians to act on behalf of the incompetent. Did a general power exist in the hands of the guardians? For the answer to this we must, as noted, revert to Texas law.

For the year at issue, Texas law did not adopt the doctrine of substitution of judgment and the guardians were unable to act solely on the basis of decedent's motives and considerations as if she were, in fact, competent. Their rights, powers, and duties were controlled by statute and the common law governed only when not in conflict with the provisions of the statutes. Tex. Prob. Code, Ann. sec. 32 (Vernon 1956); *In re Guardianship of Estate of Neal, supra.* Under the probate code of Texas, "The guardian of the person is entitled to the charge and control of the person of the ward, and the care of his support." Tex. Prob. Code Ann. sec. 229 (Vernon 1956). "The guardian of the estate of a ward is entitled to the possession and management of all properties belonging to the ward, * * * but, in the management of the estate, the guardian shall be governed by the provisions of this code. It is the duty of the guardian of the estate to take care of and manage such estate as a prudent man would manage his own property." Tex. Prob. Code Ann. sec. 230(b)(1) (Vernon 1956). This "prudent man" standard will not authorize the guardian to make gifts of the ward's estate to family members that were not in "need" even though the ward, if of sound mind, would have made the gifts. The court may not authorize the giving away or depletion of the estate but must protect and preserve such estate. *In re Guardianship of Estate of Neal, supra.*

We are aware that, to the extent the ward's annual net income exceeds $25,000 and that the full amount of any contribution if made will be deductible from the ward's Federal taxable gross income, the guardian may apply for, and the court may grant, permission to make a gift to a charitable organization not to exceed 20 percent of the net income of the ward's estate. Tex. Prob. Code Ann. sec. 398 (Vernon 1956). Of course the guardian of the person and estate must annually account to the court. Tex. Prob. Code Ann. sec. 399 (Vernon 1956). It seems perfectly clear that under the above laws of the State of Texas the broad power conferred upon the decedent under her husband's will was, upon her adjudication as an incompetent[17] and the appointment of

---

[17]This fact, that an adjudication of incompetence took place, is critical to our analysis since we are in

guardians of her person and property, transferred in a more limited form to such guardians to exercise the power on her behalf. We have previously found that, at the time of her husband's and her death, decedent was childless and had no dependents. Moreover, reference to her Federal income tax returns for years 1971 through 1973 (the year of adjudication of incompetency until her death) reveals that she had no net income.[18] Hence we do not believe that the guardians, on behalf of decedent, could give away even 20 percent of the income of Mr. Gilchrist's estate. Their duties and powers, under court control and direction, were limited to protecting and preserving her estate while providing for her support and maintenance. See *In re Guardianship of Estate of Neal, supra*. The power conferred upon and originally possessed by decedent was no longer exercisable by her, and the power held by the guardians can be fairly labeled a power limited by an ascertainable standard within the meaning of section 2041(b)(1).

To sum up, we believe that the purpose of section 2041 is not defeated in holding that, under the laws of Texas as they existed at decedent's date of death and following a legal adjudication of incompetency, neither decedent nor her guardians, on her behalf, possessed a general power of appointment within the meaning of section 2041(a)(2).

*Decision will be entered under Rule 155.*

---

full agreement with the thrust of n. 3 to the opinion in *Fish v. United States*, 432 F.2d 1278 (9th Cir. 1970), as follows:

"We note parenthetically that if the position contended for by the taxpayer were adopted, the result would be an open invitation to contest the competency of the decedent in every similar case, since the competency of any decedent who held a similar power of appointment, and many of whom suffer mental debilitation to some degree prior to death, would be subject to the same posthumous inquiry which the taxpayer seeks here. It should be noted that the decedent was never adjudicated an incompetent prior to her death."

[18]We note such returns indicated that gains or losses from sale of estate assets and earned discount of Mrs. Gilchrist's estate were reported on Mr. Gilchrist's respective estate income tax returns.